**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

DISABILITY RIGHTS MISSISSIPPI, LEAGUE
OF WOMEN VOTERS OF MISSISSIPPI,
WILLIAM EARL WHITLEY, MAMIE
CUNNINGHAM, and YVONNE GUNN,

*Plaintiffs*,

v.

Civil Action No.   3:23-cv-350-HTW-LGI

LYNN FITCH, in her official capacity as
Attorney General of the State of Mississippi;
MICHAEL D. WATSON, JR., in his official
capacity as Secretary of State of Mississippi;
GERALD A. MUMFORD, in his official capacity
as Hinds County Attorney; and ELIZABETH
AUSBERN, in her official capacity as Chickasaw
County Attorney;

*Defendants*.

**COMPLAINT**

**INTRODUCTION**

1.      The ability to vote absentee by mail is critical to Mississippi voters experiencing a

condition that prevents them from voting in person. Under Mississippi law, any voter who "is

unable to vote in person without substantial hardship" due to a disability may vote by mail. Miss.

Code Ann. § 23-15-713. In recent elections, over 100,000 Mississippians have voted absentee by

mail.

2.      Voters in Mississippi who must rely on absentee voting include, but are not limited

to, those who are blind and live far from a polling place; people with mobility disabilities who are

1

unable to travel; elderly Mississippians who are wheelchair-users and who have difficulty leaving their own homes due to inaccessible structures; and voters with disabilities who reside in nursing homes.

3.      Many of those voters with disabilities require assistance with the return of their completed ballot, which must be physically mailed to election officials in order to be counted.

4.      This action challenges the newly enacted Mississippi Senate Bill 2358[1] (2023) ("S.B. 2358"), which impermissibly restricts voters with disabilities from having a person of their choice assist them in submitting their completed mail-in absentee ballots.

5.      Mississippi voters with disabilities will be barred from receiving assistance from the people they trust—and some are likely to be disenfranchised—in the upcoming August 2023 Primary Election, November 2023 general election, and beyond if S.B. 2358 is permitted to go into effect on July 1, 2023.

6.      However, S.B. 2358 is preempted by federal law, and this Court should enjoin the law before it takes effect on July 1, 2023, and declare it unlawful.

7.      Recognizing that voters with disabilities and other challenges are disproportionately denied access to voting, Congress has specifically amended the Voting Rights Act of 1965 ("VRA") to ensure that people who require assistance in voting due to disability, blindness, or inability to read or write can receive assistance from someone they trust. *See* 52 U.S.C. § 10508.

8.      In particular, Section 208 of the VRA guarantees voters the right to "be given assistance by a person of the voter's choice." *Id.* The only exception to that rule is that the

---

[1] *Senate Bill 2358*, Mississippi Legislature, Regular Session 2023, http://billstatus.ls.state.ms.us/ documents/2023/pdf/SB/2300-2399/SB2358SG.pdf (last visited May 30, 2023).

assistance cannot come from "the voter's employer or agent of that employer or officer or agent of the voter's union." *Id.*

9.　　That right to assistance applies to all aspects of the voting process—from registration, to casting a ballot, to having that vote counted properly—and regardless of the method by which the voter lawfully chooses to vote. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017).

10.　　In contravention of Section 208, S.B. 2358 criminalizes individuals for assisting voters with the delivery of their ballots. S.B. 2358 provides, in relevant part, that "[a] person shall not knowingly collect and transmit a ballot that was mailed to another person, except" for:

(1) an election official while engaged in official duties as authorized by law;

(2) an employee of the United States Postal Service while engaged in official duties as authorized by law;

(3) any other individual who is allowed by federal law to collect and transmit United States mail while engaged in official duties as authorized by law;

(4) a family member, household member, or caregiver of the person to whom the ballot was mailed; and

(5) a common carrier that transports goods from one place to another for a fee.

11.　　Any violation of S.B. 2358 is punishable by imprisonment of up to one year in county jail and/or a fine of up to $3,000—the same penalties as a conviction for voter intimidation. Miss. Code Ann. § 97-13-37.

12.　　Thus, under the new law, apart from certain public officials and postal or mail workers, the only people who will be permitted to physically assist with the return of a completed absentee ballot are the voter's family members, household members, or caregivers, if any.

13.　　However, not every voter is able to or will choose to rely on a narrow set of individuals chosen for them by the government to return their marked ballot. Voting—and receiving assistance with voting due to disability, blindness, or illiteracy—is a highly personal act.

3

And under federal law, voters cannot be denied their right to entrust a ballot to a person of their choice.

14.     If S.B. 2358 is not enjoined, Mississippi voters may no longer rely on social workers, voter services organizations, neighbors, or even trusted friends to assist them in returning their mail-in absentee ballots without exposing them to criminal liability.

15.     Moreover, because "family member, household member, and caregiver" are not defined under the statute, the law is likely to chill any assistance provided by non-immediate relatives, volunteers, staff members at nursing homes, long-term care facilities, group homes, or hospitals, or other individuals that could provide critical and necessary assistance to voters.

16.     According to the U.S. Census Bureau, over 18 percent of Mississippians have a disability[2]—more than the national average.[3] According to a survey of the 2020 General Election, ten percent of voters with disabilities who cast an absentee ballot by mail reported needing assistance in returning their ballots.[4]

17.     S.B. 2358 makes it harder for all of those voters to cast their ballot and it also risks disenfranchising entirely blind, disabled, or low-literacy voters who rely on friends, neighbors, institutional staff, or other persons of their choice for assistance retrieving and returning their ballot.

---

[2] The Census defines a disability as "[a] long-lasting physical, mental, or emotional condition. This condition can make it difficult for a person to do activities such as walking, climbing stairs, dressing, bathing, learning, or remembering. This condition can also impede a person from being able to go outside the home alone or to work at a job or business." *Disability Definition,* U.S. Census Bureau, https://www.census.gov/glossary/?term=Disability (last visited May 27, 2023).

[3] *Table S1810, "Disability Characteristics,"* U.S. Census Bureau, https://data.census.gov/table?q=S1810&g=010XX00US_040XX00US28 (last visited May 30, 2023).

[4] Lisa Schur et al., *Disability and Voting Accessibility in the 2020 Elections: Final Report on Survey Results*, Rutgers University (2021), https://www.courthousenews.com/wp-content/uploads/2021/02/voting-accessibility-in-2020-elections.pdf (last visited May 30, 2023).

18.    By criminalizing a part of the voting process, S.B. 2358 also chills individuals and organizations who believe in the importance of voting and who are committed to helping voters who need assistance.

19.    Plaintiffs consist of a voter who needs assistance with ballot return due to mobility impairments, two individuals who provide voting assistance to their friends and neighbors, and two non-profit organizations that assist and educate Mississippi voters. S.B. 2358 harms Plaintiffs in a myriad of ways—by denying their ability to rely on a person of their choice, preventing them from assisting voters, and for organizational Plaintiffs, in addition to injuries suffered by their members, forcing them to divert resources in order to counteract the effects of S.B. 2358.

20.    For example, Plaintiff Mamie Cunningham assists multiple voters with returning their absentee ballots. One of those voters, Mae Francis Collins, is homebound and relies on others to retrieve her mail. Ms. Collins trusts Ms. Cunningham to assist her in returning her ballot; however, Ms. Cunningham is not among the people authorized by S.B. 2358 to assist Ms. Collins. Without Ms. Cunningham's assistance, Ms. Collins would likely be disenfranchised, because Ms. Cunningham is the only person whom she relies on to help return her ballot. Additionally, as a result of S.B. 2358, Ms. Cunningham would face a risk of criminal prosecution by the State of Mississippi if she were to continue assisting Ms. Collins, as she has done in the past—despite the rights guaranteed by Section 208 of the VRA.

21.    Additionally, because of the threat of criminal liability presented by S.B. 2358 and the impending elections, Plaintiff Disability Rights Mississippi ("DRMS") has had to divert its limited resources to create materials that educate Mississippi voters with disabilities on this new restriction and presenting about the law to people with disabilities in over 40 facilities. Similarly, Plaintiff League of Women Voters of Mississippi ("LWV-MS") will be redirecting financial and

other resources from their charitable purposes to educate their members, who may be assisting voters with disabilities, and Mississippi voters who require assistance navigating the absentee ballot process. LWV-MS also has a member directly affected by S.B. 2358 who risks prosecution if she continues to assist voters by returning absentee ballots.

22.     S.B. 2358 directly conflicts with Section 208 of the VRA, by impermissibly narrowing the universe of people who may assist in the voting process, disrupting the balance that Congress has struck. Under the Supremacy Clause of the U.S. Constitution, federal law preempts conflicting state law. Thus, S.B. 2358 must be declared unlawful.

23.     Accordingly, Plaintiffs bring this action against Defendants Gerald A. Mumford, Hinds County Attorney, and Elizabeth Ausbern, Chickasaw County Attorney, who are charged with enforcing S.B. 2358; against Lynn Fitch, Attorney General of Mississippi, who is charged with defending the constitutionality of Mississippi statutes and who is the chief legal officer of the state; and Michael D. Watson, Jr., Secretary of State of Mississippi, who is the chief elections officer in the state and provides guidance to county officials and the public on the absentee voting process.

24.     Because S.B. 2358 threatens to undermine the next election in Mississippi by disenfranchising some of its most vulnerable citizens, Plaintiffs respectfully ask this Court for urgent injunctive relief and a declaratory judgment that S.B. 2358 is preempted by Section 208 of the VRA.

## JURISDICTION AND VENUE

25.     The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331; 1343; and 1357. This is a civil and constitutional rights action arising under the Supremacy Clause, U.S.

Const. art. VI, cl. 2; Section 208 of the Voting Rights Act, 52 U.S.C. § 10508; and 42 U.S.C. § 1983.

26.     This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and Rules 57 and 65 of the Federal Rules of Civil Procedure to grant the declaratory and injunctive relief requested. Upon prevailing, Plaintiffs would further be entitled to fees and costs pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and at least one Defendant maintains their principal place of business and resides in the district and all other Defendants are residents of Mississippi.

28.     This action is properly filed in the Northern Division because one or more of the Defendants' primary offices is in this judicial division and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial division.

## PARTIES

29.     Plaintiff Disability Rights Mississippi is an independent, non-profit corporation organized under the laws of the State of Mississippi. DRMS was established in 1982. DRMS is a Protection and Advocacy agency ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bills of Rights Act, 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. § 10801 *et seq.,* and the Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e *et seq.*, located in Jackson, Mississippi.

30.     As Mississippi's P&A, DRMS is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities. 42 U.S.C. § 15043(a)(2)(A)(i).

31.     All Mississippi voters with disabilities are constituents of DRMS. As a P&A, DRMS is accountable to members of the disability community and is authorized under federal law to represent the interests of Mississippians with disabilities. DRMS operates under the direction of a board of directors who oversees its goals and priorities in fulfilling DRMS's mandate.

32.     Protecting the voting rights of individuals with disabilities is germane to DRMS's purpose and mission. DRMS effectuates this mission by assisting Mississippi voters in every step of the voting process from voter registration to monitoring polling accessibility.

33.     In 2009, DRMS created and continues to operate a voting hotline where those who have trouble voting can call and get assistance statewide. DRMS also employs individuals to go into mental health facilities where they conduct disability rights' presentations. These presentations include providing information for Mississippians with disabilities about their voting rights.

34.      Plaintiff League of Women Voters of Mississippi ("LWV-MS") is a non-profit, non-partisan, grassroots organization dedicated to improving governance in Mississippi by engaging all Mississippians in the decisions that impact their lives. LWV-MS was established in the 1920s. LWV-MS seeks to bring citizens into the civic process through community outreach and capacity building, voter registration and education, and community-oriented policy advocacy. LWV-MS is a nonpartisan civic organization that neither supports nor opposes any political party or candidate.

35.     LWV-MS is the Mississippi affiliate of the League of Women Voters of the United States ("LVWUS"). LWV-MS is a nonprofit 501(c)(4) membership organization, which relies on non-deductible dues to fund its action and advocacy efforts. LWV-MS conducts voter service and education activities.

36.     LWV-MS is a member-based organization and most of the League's work is made possible by volunteers. LWV-MS has five local Leagues: East-Central Mississippi (serving Meridian and Lauderdale County), Jackson-Area (serving Hinds, Madison, and Rankin Counties), Mississippi Gulf Coast (serving Hancock, Harrison, and Jackson Counties), Oxford-North Mississippi (serving Marshall, Union, Pontotoc, Calhoun, Yalobusha, Panola, Tate, Benton, Lee, and Desoto Counties), and Pine Belt (serving Hattiesburg and the surrounding area, Forrest, and Lamar Counties). LWV-MS has approximately 197 members, living in various communities across the state, including in the Southern District of Mississippi. Each local League is a member of the state League, and every local League member is a member of the state League.

37.     LWV-MS regularly conducts voter service projects, including voter registration drives and other events. Local leagues lead much of LWV-MS's voter services work and local league members are essential to accomplishing voter services project goals. LWV-MS also compiles voter guides for local races and offers this information to Mississippians by sending questionnaires to candidates, making telephone calls, and conducting research through electronic platforms.

38.     Part of this assistance includes educating voters on how to vote absentee by mail. LVW-MS also has at least one member who has assisted voters with disabilities or the inability to read or write with the return of their mail-in absentee ballot and intends to do in the future but for S.B. 2358. LVW-MS also has at least one member who voted absentee by mail in a prior election.

39.     Plaintiff Mamie Cunningham is an 83-year-old, Black woman, and a lifelong resident of Okolona, (Chickasaw County), Mississippi. She is a retired public-school teacher. For the last 64 years, Ms. Cunningham has been registering voters and advocating for civil rights in Mississippi. Since approximately 2000, Ms. Cunningham has assisted members of her community who experience blindness, immobility, illiteracy, and old age, with absentee voting in Mississippi. Part of this assistance has included mailing the ballot back after it is completed. Ms. Cunningham has become a trusted member of her community regarding voting, which is why many rely on her to return their ballot. Ms. Cunningham wishes to continue providing assistance to members of her community in future elections but she fears prosecution under S.B. 2358.

40.     Plaintiff Yvonne Gunn is a 73-year-old Black woman and a resident of Okolona, Mississippi. Since 2018, Ms. Gunn has been helping members of her community register to vote and cast an absentee ballot when necessary. The people she has assisted are typically elderly, disabled, or lack transportation. The assistance she provides includes physically placing sealed ballot envelopes in the mailbox. Ms. Gunn has become a trusted member of her community regarding voting, which is why many rely on her to return their ballot. Ms. Gunn wishes to continue providing assistance to members of her community in future elections but she fears prosecution under S.B. 2358.

41.     Plaintiff William Earl Whitley is a 78-year-old Black man, and an Army veteran who served in the Vietnam War. He is a registered voter and resident of Okolona, Mississippi. Mr. Whitley had both of his legs amputated after being exposed to Agent Orange during his service. He has prosthetics but suffers daily from phantom pain that often makes it too painful to use them. Additionally, his legs become swollen and he has to wait until they shrink to put on the prosthetics. This pain and discomfort lead to days where Mr. Whitley is unable to leave his home. He must

rely on other people to assist him on these days, including asking his neighbor to get his mail. Mr. Whitley has relied on both Ms. Cunningham and Ms. Gunn in the past to assist him in voting, including the mailing of his completed absentee ballot. Mr. Whitley wishes to continue to have them assist him but he does not want to put them at risk of facing criminal penalties.

42.     Defendant Lynn Fitch is the Attorney General of the State of Mississippi and is sued in her official capacity as the State's chief legal officer. Miss. Code Ann. § 7-5-1. Attorney General Fitch is responsible for "interven[ing] [and arguing] the constitutionality of any statute when notified of a challenge thereto." *Id.* She also has "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state." *Bell v. State*, 678 So. 2d 994, 996 (Miss. 1996).

43.     Defendant Michael Watson is the Secretary of State of Mississippi and is sued in his official capacity. Secretary Watson is Mississippi's chief election officer. Miss. Code Ann. § 23-15-211.1. Secretary Watson is also responsible for promulgating rules and regulations necessary to effectuate the Help America Vote Act of 2002. *Id.* § 23-15-169.5. Secretary Watson also has the authority to promulgate rules regarding absentee voting. 1 Miss. Admin. Code Pt. 17 *et seq.*; Miss. Code Ann. § 23-15-639(2). Secretary Watson provides guidance to county officials regarding absentee voting, including through the "County Elections Handbook,"[5] on topics such as when absentee ballots should be counted or rejected. The Handbook also contains a section entitled "Voter Assistance," which explains the circumstances under which voters may receive assistance and the categories of persons who may provide that assistance. The Secretary also

---

[5] *County Elections Handbook,* Miss. Sec'y of State (Oct. 2020), https://www.sos.ms.gov/sites/default/files/election_and_voting/County_Elections_Handbook_Final.pdf.

provides guidance to the public about voting and elections, including instructions for completing and returning absentee ballots.[6]

44.     Defendant Gerald A. Mumford is the County Attorney for Hinds County and is sued in his official capacity. County Attorney Mumford is charged with "full responsibility" for prosecuting misdemeanors. Miss. Code Ann. § 19-23-11.

45.     Defendant Elizabeth Ausbern is the County Attorney for Chickasaw County and is sued in her official capacity. County Attorney Ausbern is charged with "full responsibility" for prosecuting misdemeanors. Miss. Code Ann. § 19-23-11.

## FACTUAL ALLEGATIONS

### I.      Federal law guarantees voters with disabilities and lower literacy skills the right to assistance from a person of their choice.

46.     Section 208 of the VRA provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

47.     According to the Fifth Circuit, the "unambiguous language" of the VRA "guarantees to voters [the] right to choose any person they want . . . to assist them throughout the voting process," including the steps necessary to "having [the] ballot counted properly." *OCA-Greater Houston*, 867 F.3d at 615.

48.     Congress's intent in enacting Section 208 is clear from both the text and the legislative history. The Report of the Senate Judiciary Committee articulated the problem that Congress sought to address: "[c]ertain discrete groups of citizens are unable to exercise their rights

---

[6] *Absentee Voting Information,* Miss. Sec'y of State, https://www.sos.ms.gov/absentee-voting-information (last visited May 27, 2023).

to vote without obtaining assistance in voting, including aid within the voting booth" and "many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice." S. Rep. No. 97-417, at 62 (1982). Accordingly, the purpose of Section 208 is "to limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote." *Id.*

49.     Section 208 empowered covered voters to receive assistance from almost anyone of their choice because it was "the most effective method of providing assistance," *id.* at 64, and "the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter." *Id.* at 62. "To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens." *Id.*

50.     The Committee explicitly wrote that Section 208 is intended to preempt state law when state law "[denies] the assistance at some stages of the voting process during which assistance was needed." *Id.* at 63.

**II.     S.B. 2358 limits the rights of voters with disabilities.**

51.     Under Mississippi law, "[a]ny person who has a temporary or permanent physical disability and who, because of such disability, is unable to vote in person without substantial hardship to [themselves], or whose attendance at the voting place could reasonably cause danger to [themselves] or others" may vote by mail. Miss. Code Ann. § 23-15-713.

52.     To vote by mail, the voter must first fill out an application for the ballot and have it witnessed by any "person eighteen years of age or older." *Id.* at § 23-15-715(b). Once they receive the ballot, they must also have someone witness the vote and sign the "ATTESTING WITNESS CERTIFICATE." *Id.* at § 23-15-631(1)(c). The witness may be any "person eighteen years of age or older." *Id.* at § 23-15-631(1). If the voter needs assistance to vote because of "blindness, temporary or permanent physical disability or the inability to read or write," they "shall

be entitled to receive assistance in the marking of [their] ballot and in completing the affidavit on the absentee ballot envelope." *Id.* at § 23-15-631(f). The assistance can be given by "anyone of the voter's choice." *Id.*

53.     However, on March 23, 2023, Governor Tate Reeves signed S.B. 2358, which criminalizes certain forms of ballot assistance that are protected by Section 208 of the VRA.

54.     S.B. 2358 is set to go into effect July 1, 2023.

55.     Any violation of S.B. 2358 is criminally punishable to the same extent as voter intimidation under Miss. Code Ann. § 97-13-37—imprisonment of up to one year in county jail and/or a fine of up to $3,000.

56.     By making it a criminal act to provide assistance with the delivery of a ballot, whether as a friend, neighbor, institutional staff member, or volunteer, S.B. 2358 sharply limits the pool of individuals available to voters with disabilities and deprives many of their person of choice.

57.     S.B. 2358 is likely to harm thousands of Mississippi voters who vote absentee.

58.     An estimated one in five adults in Mississippi, over 850,000 people, have a disability.[7]

59.     In general, people with disabilities disproportionately rely upon absentee voting because of difficulties with mobility, limited access to transportation, risks associated with in-person voting, accessibility barriers at polling places, or residency status in an institution.[8]

---

[7] *See* Ctr. For Disease Control and Prevention, *Disability & Health U.S. State Profile Data for Mississippi*, https://www.cdc.gov/ncbddd/disabilityandhealth/impacts/mississippi.html (last visited May 26, 2023).

[8] *See* Lisa Schur & Douglas Kruse, *Fact sheet: Disability and Voter Turnout in the 2020 Elections*, Election Assistance Commission, https://www.eac.gov/sites/default/files/document_library/files/Fact_sheet_on_disability_and_voter_turnout_in_2020_0.pdf (last visited May 26, 2023); *see* Danielle Root & Mia Ives-Rublee, *Enhancing Accessibility in U.S. Elections*, Ctr. for Am. Progress, (July

60.     Over 100,000 Mississippians have voted absentee by mail in recent elections.[9]

**III.     S.B. 2358's impact on Plaintiffs.**

61.     As a P&A, Plaintiff DRMS is accountable to members of the disability community and is authorized under federal law to represent the interest of Mississippians with disabilities. All Mississippi voters with disabilities are constituents of Plaintiff DRMS.

62.     Protecting the voting rights of individuals with disabilities is central to DRMS's mission and purpose. One or more of DRMS's constituents would have standing to seek redress for the violations complained of herein.

63.     On behalf of its constituents with disabilities who are being denied their federally protected right to vote absentee with an assistant of their choosing, each of whom would have standing to challenge the infringement of rights conferred by Section 208 of the VRA, DRMS seeks to prevent this violation of their constituents' rights.

64.     DRMS also has standing to bring this claim due to a frustration of its mission and a diversion of resources. Because of S.B. 2358, DRMS has had to divert funds from other services it offers to warn voters who relied on individuals who are now not authorized to assist them. This includes creating new presentation materials; having to train the presenters; giving at least 40 presentations in facilities, with more to be scheduled; creating new flyers to warn voters; and other costs to prevent the disenfranchisement of Mississippi voters with disabilities.

65.     Similarly, encouraging civic participation through voting and assisting voters is central to Plaintiff LWV-MS's purpose. At least one LWV-MS member has previously assisted

---

2021), https://search.issuelab.org/resource/enhancing-accessibility-in-u-s-elections.html (last visited May 26, 2023).

[9] *Mississippi absentee voting continues to increase,* AP News, (October 26, 2020), https://apnews.com/article/election-2020-mississippi-elections-voting-2020-voting-fe4f5dfb95e37ee8dea94d70c2ead5f6.

voters in returning absentee ballots. One or more of the members now fear prosecution if they assist voters in upcoming elections. On behalf of its members, LWV-MS seeks to protect their rights.

66.     Moreover, LWV-MS creates voter education materials for its members and Mississippi voters. S.B. 2358 will now force them to divert time and funds to recreate these materials to warn those who assist voters and those who receive assistance. Because S.B. 2358 does not clearly define who is authorized to return ballots, LWV-MS will likely be forced to expend time and resources to warn its members not to return any ballots at all—even if the member might be authorized—because of the high risk of imprisonment, legal costs, and reputational harm to LWV-MS if members are arrested or prosecuted.

67.     Plaintiff Mr. Whitley is a registered voter who is physically disabled. He has been disenfranchised in prior elections because he was not able to go to the polls and vote due to the severe pain in his legs. It was not until Ms. Cunningham explained to him that he was eligible to vote absentee by mail that he began to use this process. In 2022, Ms. Cunningham assisted him throughout the voting process, and Ms. Gunn went to Mr. Whitley's house to make sure he completed the forms correctly. Mr. Whitley had Ms. Gunn return his ballot in the mail for him.

68.     Mr. Whitley wishes to be able to have the assistance of Ms. Cunningham and Ms. Gunn—the people he trusts—to return his absentee ballot for him in the future; however, because of S.B. 2358, he is now afraid to contact them for help because he does not want to put them at risk of criminal penalties.

69.     Plaintiffs Ms. Cunningham and Ms. Gunn have assisted approximately ten voters with absentee voting in Chickasaw County. This assistance encompasses everything from voter

registration to returning the ballot. They want to assist voters in the upcoming election but now fear prosecution because of S.B. 2358.

70.     Mae Francis Collins is one of the registered voters with physical disabilities whom Ms. Cunningham assists who may be disenfranchised as a result of S.B. 2358. Ms. Collins is 86 years old, and a resident of Okolona, Mississippi, where she is registered to vote. Ms. Collins is homebound. Although she uses a walker and wheelchair in the home, she cannot leave her home without assistance, in part because her home has no accessible path. Because she cannot access her mailbox across the street from her home without assistance, she relies on others to bring her the mail. Ms. Collins trusts Ms. Cunningham to assist her with voting and previously asked her to help her vote by mail. Ms. Cunningham has helped her return her ballot, most recently in 2022. Because of S.B. 2358 and Ms. Cunningham's fear of prosecution, Ms. Collins will be left without the person she trusts to assist her to vote.

71.     One month after S.B. 2358 goes into effect, Mississippi will have a primary election in August 2023. Mississippi voters with disabilities will be irreparably harmed by not being able to turn to the person they trust to help them return their ballots, and some may be disenfranchised as a result.

## COUNT 1

**Supremacy Clause, U.S. Const. art. VI, cl. 2; Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508; 42 U.S.C. § 1983**

72.      Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

73.     Section 208 of the VRA provides:

Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

17

52 U.S.C. § 10508. Under the VRA, the terms "vote" and "voting" mean

> all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

*Id.* § 10310(c)(1); *see OCA-Greater Houston*, 867 F.3d at 614-15.

74.     Under Section 208, a voter may exercise their right to seek assistance from anyone unrelated to their employer or union. 52 U.S.C. § 10508. In other words, voters may ask virtually any person of their choice to help deliver their ballot, with only narrow exceptions. *See OCA-Greater Houston*, 867 F.3d at 614-15.

75.     However, S.B. 2358 reverses the rule created by Section 208: prohibiting almost all assistance with only specific exceptions. S.B. 2358 restricts the universe of people who can help deliver ballots to: (i) election officials, (ii) postal workers, (iii) other individuals whose official duties include the delivery of the mail, (iv) family members, household members, or caregivers, and (v) a common carrier.[10]

76.     By sharply limiting who can collect or deliver a completed ballot, S.B. 2358 criminalizes a form of assistance that Congress determined voters should be able to access. Under

---

[10] S.B. 2358 permits collection and transmission of ballots by only:

(1) an election official while engaged in official duties as authorized by law;

(2) an employee of the United States Postal Service while engaged in official duties as authorized by law;

(3) any other individual who is allowed by federal law to collect and transmit United States mail while engaged in official duties as authorized by law;

(4) a family member, household member, or caregiver of the person to whom the ballot was mailed; and

(5) a common carrier that transports goods from one place to another for a fee.

S.B. 2358, most of the individuals who could assist with ballot delivery under Section 208 would be committing a crime, punishable by up to 1 year in county jail and/or $3,000 in fines.

77.     As in the case of multiple voters that Plaintiffs have assisted in the past, such as Ms. Mae Francis Collins, and constituents of DRMS who reside in institutions where staff handle all of their mail, S.B. 2358 deprives certain voters of their only options for assistance. As a result, those voters will be disenfranchised in future elections.

78.     Even if a voter has someone else from whom they *could* conceivably seek assistance, Section 208 guarantees voters the right to rely on a person of their choice, and the denial of that choice alone undermines the purposes and objectives of Section 208.

79.     Furthermore, individuals and organizations, like Plaintiffs, who have provided voter assistance in the past now fear prosecution if they assist in the future. The potential criminal liability will have a chilling effect on those who would otherwise assist.

80.     Through Section 208, Congress expressed that voters must have broad discretion to ask someone of their choice for help—unless that person is associated with their employer or labor union. S.B. 2358 directly contravenes the careful balance that Congress has struck by imposing additional restrictions on assistance.

81.     S.B. 2358 therefore "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and should be preempted. *Arizona v. United States*, 567 U.S. 387, 406 (2012); *OCA-Greater Houston*, 867 F.3d at 615 (invalidating statute that "impermissibly narrows the right guaranteed by Section 208 of the VRA").

82.     Defendants, acting under color of state law, are depriving Plaintiffs of a right secured by the laws of the United States.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

(1)     Declare that S.B. 2358 violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and the Supremacy Clause, and is thereby preempted to the extent it conflicts with federal law;

(2)     Preliminarily and permanently enjoin Defendants from implementing or enforcing S.B. 2358 to the extent it conflicts with federal law;

(3)     Preliminarily and permanently enjoin Defendants from issuing any instructions or guidance directing any state, county, or local officials to implement or enforce S.B. 2358 in a manner that conflicts with federal law;

(4)     Order Defendants to rescind any instructions or communications—whether public-facing or otherwise—indicating that voters may not seek assistance except for the categories defined in S.B. 2358, and order Defendants to issue corrective instructions or communications that voters who require assistance due to blindness, disability, or inability to read or write may continue to seek assistance from any person of their choice, except for the exclusions defined under Section 208 of the VRA;

(5)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys' fees; and

(6)     Grant Plaintiffs such additional and further relief as this Court deems just and proper.

DATED: May 31, 2023

Respectfully submitted,

/s/ *Leslie Faith Jones*

SOUTHERN POVERTY LAW CENTER
Leslie Faith Jones (Miss. Bar. No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
leslie.jones@splcenter.org

Bradley E. Heard*
Sabrina Khan*
Jess Unger*
Ahmed Soussi*
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(334) 213-8303
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org
ahmed.soussi@splcenter.org

MISSISSIPPI CENTER FOR JUSTICE
Robert McDuff (Miss. Bar No. # 2532)
210 E. Capitol St., Suite 1800
Jackson, Mississippi 39201
(601) 259-8484
rmcduff@mscenterforjustice.org

AMERICAN CIVIL LIBERTIES UNION OF
MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Claudia Williams Hyman*
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org
cwilliamshyman@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ming Cheung*
Casey Smith*
Ari J. Savitzky*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
csmith@aclu.org
asavitzky@aclu.org
slakin@aclu.org

DISABILITY RIGHTS MISSISSIPPI
Greta Kemp Martin, (Miss. Bar No. 103672)
Katherine Henderson, (Miss. Bar No. 104522)
5 Old River Place, Suite 101
Jackson, MS 39202
Office: (601)968-0600
Facsimile: (601)968-0665
gmartin@drms.ms
khenderson@drms.ms

*Attorneys for Plaintiffs*

*Pro Hac Vice Forthcoming