**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| DISABILITY RIGHTS MISSISSIPPI, LEAGUE OF WOMEN VOTERS OF MISSISSIPPI, WILLIAM EARL WHITLEY, MAMIE CUNNINGHAM, and YVONNE GUNN,<br><br>*Plaintiffs*,<br><br>v.<br><br>LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi; MICHAEL D. WATSON, JR., in his official capacity as Secretary of State of Mississippi; GERALD A. MUMFORD, in his official capacity as Hinds County Attorney; and ELIZABETH AUSBERN, in her official capacity as Chickasaw County Attorney;<br><br>*Defendants*. | Civil Action No. 3:23-cv-350-HTW-LGI |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' URGENT AND
NECESSITOUS MOTION FOR PRELIMINARY INJUNCTION**

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES .................................................................................... iv

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 5

   I.    ABSENTEE VOTING IN MISSISSIPPI .................................................... 5

   II.   IMPACT OF S.B. 2358 ON PLAINTIFFS .................................................. 7

ARGUMENT ........................................................................................................... 10

   I.    PLAINTIFFS HAVE STANDING TO SEEK A PRELIMINARY INJUNCTION .. 10

   II.   S.B. 2358 CONFLICTS WITH SECTION 208 OF THE VRA AND SHOULD BE ENJOINED. ........................................................................................... 13

      a.   Plaintiffs are likely to succeed on the merits of the claim that S.B. 2358 is preempted by Section 208 of the VRA. ........................................................................... 13

         i.   Fifth Circuit precedent compels the conclusion that Section 208 preempts S.B. 2358.   14

         ii.   Section 208's legislative history confirms that Congress intended to grant voters the right to seek assistance from any person of their choice. .............................................. 17

      b.   Plaintiffs are likely to suffer irreparable harm. ...................................................... 18

      c.   A preliminary injunction will serve the public interest. ......................................... 20

      d.   The balance of equities favors granting a preliminary injunction. ......................... 20

CONCLUSION ............................................................................................................. 23

CERTIFICATE OF SERVICE ................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ABC Charters, Inc. v. Bronson*,
   591 F. Supp. 2d 1272 (S.D. Fla. 2008) ........................................................................ 19

*Advocacy Center for the Elderly & Disabled v. Louisiana Department of Health & Hospitals*,
   731 F. Supp. 2d 583 (E.D. La. 2010) .......................................................................... 12

*American Ass'n of People with Disabilities v. Hood*,
   278 F. Supp. 2d 1345 (M.D. Fla. 2003) ...................................................................... 16

*Andrus v. Glover Construction Co.*,
   446 U.S. 608 (1980) ...................................................................................................... 15

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................................................ 13, 14

*Arkansas United v. Thurston*,
   2022 WL 4097988 (W.D. Ark. Sept. 7, 2022) ...................................................... 16, 17

*Arlington Heights v. Metropolitan Housing Development Corporation*,
   429 U.S. 252 (1977) ...................................................................................................... 10

*Babbitt v. United Farm Workers National Union*,
   442 U.S. 289 (1979) ...................................................................................................... 11

*Carey v. Wisconsin Elections Commission*,
   2022 WL 3910457 (W.D. Wis. Aug. 31, 2022) .................................................... 14, 16

*Chevron U.S.A. Inc. v. Echazabal*,
   536 U.S. 73 (2002) ........................................................................................................ 16

*Common Cause Rhode Island v. Gorbea*,
   970 F.3d 11 (1st Cir. 2020) ...................................................................................... 21, 23

*Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) ........................................................................................ 18

*De Leon v. Perry*,
   975 F. Supp. 2d 632 (W.D. Tex. 2014) ........................................................................ 18

*Democracy North Carolina v. North Carolina State Board of Elections*,
   476 F. Supp. 3d 158 (M.D.N.C. 2020) ........................................................................ 16

*Democracy North Carolina v. North Carolina State Board of Elections*,
    590 F. Supp. 3d 850 (M.D.N.C. 2022) ....................................................... 11

*Disability Rights North Carolina v. North Carolina State Board of Elections*,
    602 F. Supp. 3d 872 (E.D.N.C. 2022) ....................................................... 14

*Disability Rights North Carolina v. North Carolina State Board of Elections*,
    2022 WL 2678884 (E.D.N.C. July 11, 2022)............................................. 11, 12, 17

*Dunn v. Dunn*,
    219 F. Supp. 3d 1163 (M.D. Ala. 2016) ................................................... 12

*Feldman v. Arizona Secretary of State's Office*,
    843 F.3d 366 (9th Cir. 2016) ................................................................. 22

*Georgia. Latino Alliance for Human Rights v. Governor of Georgia*,
    691 F.3d 1250 (11th Cir. 2012) .............................................................. 19

*Gade v. National Solid Wastes Management Ass'n*,
    505 U.S. 88 (1992) .............................................................................. 2

*Gibbons v. Ogden*,
    22 U.S. 1 (1824) ................................................................................. 13

*Giovani Carandola, Ltd. v. Bason*,
    303 F.3d 507 (4th Cir. 2002) ................................................................. 21

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................ 11

*Hillman v. Maretta*,
    569 U.S. 483 (2013) ............................................................................ 15

*Hillsborough County, v. Automated Medical Laboratories, Inc.*,
    471 U.S. 707 (1985) ............................................................................ 13

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977) ............................................................................ 11

*Indiana State Conference of NAACP v. Lawson*,
    326 F. Supp. 3d 646 (S.D. Ind. 2018).................................................... 19

*Ingebretsen on behalf of Ingebretsen v. Jackson Public School District*,
    88 F.3d 274 (5th Cir. 1996) .................................................................. 20

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ..................................................................... 13

*Louisiana ACORN Fair Housing v. LeBlanc,*
   211 F.3d 298 (5th Cir. 2000) ..................................................................... 11

*La Union del Pueblo Entero v. Abbott,*
   604 F. Supp. 3d 512 (W.D. Tex. 2022) ............................................... 14, 15

*League of Women Voters of Florida, Inc., v. Detzner,*
   314 F. Supp. 3d 1205 (N.D. Fla. 2018) ..................................................... 20

*League of Women Voters of North Carolina v. North Carolina,*
   769 F.3d 224 (4th Cir. 2014) ............................................................... 18, 22

*Lujan v. Defenders of Wildlife,*
   504 U.S. 55 (1992) ..................................................................................... 10

*Mi Familia Vota v. Abbott,*
   497 F. Supp. 3d 195 (W.D. Tex. 2020) ..................................................... 18

*Murphree v. Winter,*
   589 F. Supp. 374 (S.D. Miss. 1984) .......................................................... 20

*Obama for America v. Husted,*
   697 F.3d 423 (6th Cir. 2012) ..................................................................... 20

*OCA-Greater Houston v. Texas,*
   867 F.3d 604 (5th Cir. 2017) .............................................................. Passim

*Opulent Life Church v. City of Holly Springs,*
   697 F.3d 279 (5th Cir. 2012) ..................................................................... 18

*Peyton v. Rowe,*
   391 U.S. 54 (1968) ..................................................................................... 16

*Pierce v. Allegheny County Board of Elections,*
   324 F. Supp. 2d 684 (W.D. Pa. 2003) ....................................................... 16

*Planned Parenthood Gulf Coast, Inc. v. Kliebert,*
   141 F. Supp. 3d 604 (M.D. La. 2015) ....................................................... 21

*Reynolds v. Sims,*
   377 U.S. 533 (1964) ................................................................................... 18

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
   547 U.S. 53 (2006) ........................................................................................... 10

*United States v. Alabama*,
   691 F.3d 1269 (11th Cir. 2012) ...................................................................... 20

*United States v. Berks County*,
   277 F. Supp. 2d 570 (E.D. Pa. 2003)......................................................... 23, 24

*United States v. Zadeh*,
   820 F.3d 746 (5th Cir. 2016) .......................................................................... 20

*Veasey v. Perry*,
   769 F.3d 890 (5th Cir. 2014) ...................................................................... 21, 22

*Westchester Disabled on the Move, Inc. v. County of Westchester*,
   346 F. Supp. 2d 473 (S.D.N.Y. 2004) ............................................................ 19

*Wooden v. United States*,
   142 S. Ct. 1063 (2022).................................................................................... 17

**Statutes**

42 U.S.C. § 15043(a)(2)(A)(i) ................................................................................ 3

52 U.S.C. 10310(c)(1) .................................................................................... 8, 14

52 U.S.C. § 10508 ............................................................................. 1, 13, 14, 15

Miss. Code Ann. § 7-5-1 ...................................................................................... 12

Miss. Code Ann. § 23-15-719 .............................................................................. 14

Miss. Code Ann. § 23-15-549 .............................................................................. 18

Miss. Code Ann. § 23-15-713(d) ........................................................................... 5

Miss. Code Ann. § 23-15-631(f) .......................................................................... 18

Miss. Code Ann. § 23-15-639(2) .......................................................................... 12

Miss. Code Ann. § 97-13-37 .................................................................................. 7

**Regulations**

1 Miss. Admin. Code Pt. 17................................................................................... 12

**Other Authorities**

S. Rep. No. 97-417 ........................................................................................................... 17

# INTRODUCTION

Unless this Court intervenes, Senate Bill 2358 ("S.B. 2358") will unlawfully prevent voters with disabilities and other needs from receiving critical assistance from persons of their choice in the upcoming August and November elections when the law takes effect on July 1, 2023. The newly enacted law is therefore likely to disenfranchise some of Mississippi's most vulnerable citizens.

Under Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, voters who require assistance with voting due to physical disabilities, blindness, or language barriers have a right to seek assistance from "any person they want," with only specific exceptions: that the assistor may not be the voter's "employer or agent of that employer or officer or agent of [their] union." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 607, 614 (5th Cir. 2017).

However, S.B. 2358 will soon deprive voters of that choice, in contravention of federal law and Fifth Circuit precedent, by criminalizing efforts to assist voters with the return of their ballots. S.B. 2358 generally prohibits the knowing collection or transmission of a ballot by persons other than the voter's "family member, household member, or caregiver." But under Section 208, voters who require assistance due to disability, blindness, or inability to read or write are entitled to entrust their ballot to the person of their choice—and the person they trust might not be a family member or anyone else that the State might choose for them.

Moreover, some Mississippi voters who need assistance live alone, or have no willing family or caregiver to deliver a ballot. Others live in institutions, where staff (who may not qualify as "caregivers," a term the State has not defined) are responsible for helping them return all of their mail, including absentee ballots. Those voters will likely be disenfranchised under S.B. 2358. *See, e.g.,* Ex. 1, Declaration of Mamie Cunningham ("Cunningham Dec.") ¶¶ 10, 17-18; Ex. 2,

1

Declaration of Polly Tribble on behalf of Disability Rights Mississippi ("DRMS Dec.") ¶¶ 13-18. S.B. 2358's limitation on voters' choice is in direct conflict with Section 208 and therefore preempted under the Supremacy Clause of the U.S. Constitution. *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

The ability to vote absentee by mail is critical to Mississippi voters experiencing a condition that prevents them from voting in person. In recent elections, over 100,000 Mississippians have voted absentee by mail.[1] Many voters with disabilities require assistance with the return of their completed ballot, which must be physically mailed to election officials in order to be counted. *See, e.g.*, DRMS Dec. ¶ 14.

Plaintiffs include both voters in need of assistance and organizations and individuals who work to provide that assistance in their communities. For example, Plaintiff William Earl Whitley—an Army veteran—is a voter who has relied and wants to continue to rely on Plaintiff Yvonne Gunn to assist him in the return of his ballot. Declaration of Yvonne Gunn, attached Ex. 3, ("Gunn Dec.") ¶ 9. Mr. Whitley lost both of his legs due to being exposed to Agent Orange. Declaration of William Earl Whitley, attached Ex. 4, ("Whitley Dec.") ¶ 5. Because of S.B. 2358, he now fears that Ms. Gunn cannot assist him because she would be prosecuted by Defendants. *Id*. ¶¶ 18-20.

Plaintiffs Mamie Cunningham and Yvonne Gunn have been helping friends and neighbors throughout their community vote for over twenty years. They assist several voters who otherwise would not be able to return their absentee ballots, including an 86-year-old woman who is unable

---

[1] Mississippi Absentee Voting Continues to Increase, AP News (Oct. 26, 2020), https://apnews.com/article/election-2020-mississippi-elections-voting-2020-voting-fe4f5dfb95e37ee8dea94d70c2ead5f6.

to leave her house due to a combination of mobility issues and a lack of an accessible path to her own home. Cunningham Dec. ¶ 11.

So too, Disability Rights Mississippi ("DRMS") and League of Woman Voters of Mississippi ("LWV-MS") would face irreparable harm if S.B. 2358 were to go into effect. LWV-MS is a grassroots, member-based organization that seeks to involve citizens in the civic process, including by helping Mississippi voters to navigate the absentee voting process. Declaration of Margaret Ciraldo on behalf of the League of Women Voters, attached Ex. 5, ("LWV-MS Dec.") ¶¶ 4-7, 13. LWV-MS is a membership organization who has at least one member who has assisted voters in completing and returning absentee ballots in the past and wants to continue, but now fears prosecution by Defendants. *Id*. ¶ 14. Further, LWV-MS has had to expend resources to create informational materials about S.B. 2358 and to warn members not to return ballots. *Id*. ¶ 13.

DRMS is Mississippi's Protection and Advocacy agency ("P&A") and is authorized to pursue legal action on behalf of the rights of individuals with disabilities in the State. 42 U.S.C. § 15043(a)(2)(A)(i); DRMS Dec. ¶ 4. This includes all Mississippi voters with disabilities who rely on Section 208's guarantee that it is their choice who provides them assistance. *Id*. ¶ 7. DRMS works to educate voters on their voting rights, including procedures for absentee voting. *Id*. ¶ 11. The organization has had to divert substantial resources to prepare to educate voters about the requirements of S.B. 2358, including by creating new informational materials, developing and giving an entirely new presentation in over 40 facilities, and training staff on how to answer questions about the law; this new work takes away from its other critical work, including identifying and resolving potential instances of neglect in institutions. *Id*. ¶¶ 20-26.

Each of the Plaintiffs will suffer imminent and irreparable injury if S.B. 2358 is not enjoined. With elections in August and November, Mississippi voters with disabilities and other

needs, like any other voter, must be able to fully exercise their right to vote. Voters like Mr. Whitley and DRMS's constituents will be denied their right to designate someone of their choice to assist them—and are at risk of being disenfranchised. Whitley Dec. ¶ 19; DRMS Dec. ¶¶ 13-19. Assisters like Ms. Cunningham, Ms. Gunn, and LWV-MS fear criminal prosecution by Defendant County Attorneys Elizabeth Ausbern and Gerald Mumford (hereinafter "County Attorney Defendants") if they continue to assist as they have in the past. Gunn Dec. ¶ 18; LWV-MS Dec. ¶ 14. Additionally, DRMS and LWV-MS are also injured due to diverting resources from other organizational priorities to educate and caution the community and its members about this new criminal law. DRMS Dec. ¶¶ 20-26; LWV-MS Dec. ¶ 13.

Meanwhile, Defendants have no legitimate interest in enforcing an unlawful statute—S.B. 2358 directly frustrates the purposes and goals of Section 208 of the VRA and is therefore preempted by federal law. The public interest also favors allowing Mississippi residents to vote using an option they have relied on for decades, and an injunction maintaining the current status quo would not disrupt election administration. In fact, enjoining S.B. 2358, a criminal provision, would have no impact on election administration; enjoining its enforcement would simply maintain the status quo. All relevant considerations therefore support the issuance of a preliminary injunction, and Plaintiffs respectfully request that their motion be granted.

## FACTUAL BACKGROUND

### I.  ABSENTEE VOTING IN MISSISSIPPI

An estimated one in five adults in Mississippi, over 850,000 people, have a disability.[2] In general, people with disabilities disproportionately rely upon absentee voting because of difficulties with mobility, limited access to transportation, risks associated with in-person voting, and accessibility barriers at polling places.[3] Mississippi law permits "[a]ny person who has a temporary or permanent physical disability and who, because of such disability, is unable to vote in person without substantial hardship to himself, herself or others, or whose attendance at the voting place could reasonably cause danger to himself, herself or others" to vote absentee. Miss. Code Ann. § 23-15-713(d).

First, the voter must apply for an absentee ballot. *Id.* at § 23-15-715. Mississippi requires absentee ballot applications to be notarized but allows voters with disabilities to have their application witnessed and signed by any person who is 18 years old. *Id.* at § 23-15-627. Next, the "registrar shall send to such absent voter a proper absentee voter ballot." *Id.* at § 23-15-715. Mississippi also requires absentee ballots to be witnessed. *Id.* at § 23-15-631. Voters with disabilities may have their absentee ballots witnessed by any person who is 18 years old. *Id.* If a voter needs assistance in filling out the ballot, they "may be given assistance by anyone of [their] choice other than a candidate whose name appears on the absentee ballot being marked, the spouse,

---

[2] *See* Ctr. For Disease Control and Prevention, Disability & Health U.S. State Profile Data for Mississippi, https://www.cdc.gov/ncbddd/disabilityandhealth/impacts/mississippi.html (last visited May 26, 2023).

[3] *See* Lisa Schur & Douglas Kruse, *Fact sheet: Disability and Voter Turnout in the 2020 Elections*, Election Assistance Commission, https://www.eac.gov/sites/default/files/document_library/files/Fact_sheet_on_disability_and_voter_turnout_in_2020_0.pdf (last visited May 26, 2023); *see* Danielle Root & Mia Ives-Rublee, *Enhancing Accessibility in U.S. Elections*, Ctr. For Am. Progress, (July 2021), https://search.issuelab.org/resources/38826/38826.pdf.

parent or child of a candidate whose name appears on the absentee ballot being marked or the voter's employer, an agent of that employer or a union representative. . . ." *Id.* at § 23-15-631(f). The ballot must be placed in the provided envelope, which is to be sealed, with the voter's and the witness's signatures placed along the flap. *Id.* at § 23-15-719(3).

"After the absentee voter has sealed the envelope, he or she shall subscribe and swear to an affidavit and mail the ballot to the address" provided by the county registrar (*i.e.*, circuit clerk). *See id.* at § 23-15-719(1). Under Mississippi law, those ballot envelopes must be delivered to and inspected by the circuit clerks before they can be counted. *Id.* at §§ 23-15-639, 23-15-641.

Prior to S.B. 2358—and consistent with the state's other absentee laws—Mississippi did not restrict who could return an absentee voter's ballot. S.B. 2358 now flips the presumption and creates only a "few exceptions" to a general prohibition on the delivery of another person's ballot.[4] Under S.B. 2358, "[a] person shall not knowingly collect and transmit a ballot that was mailed to another person, except" for:

(1) an election official while engaged in official duties as authorized by law;
(2) an employee of the United States Postal Service while engaged in official duties as authorized by law;
(3) any other individual who is allowed by federal law to collect and transmit United States mail while engaged in official duties as authorized by law;
(4) a family member, household member, or caregiver of the person to whom the ballot was mailed; and
(5) a common carrier that transports goods from one place to another for a fee.

Notably, the statute does not define the term "caregiver," leaving some legal ambiguity as to whether staff of nursing facilities, other long-term care institutions, and homeless shelters may assist voters with ballot return.

---

[4] *See* Secretary Michael Watson (@MichaelWatsonMS) Twitter (Mar. 22, 2023, 1:13 PM) https://twitter.com/MichaelWatsonMS/status/1638604905622405120?cxt=HHwWgICw7duev70tAAAA.

Any violation of S.B. 2358 shall be subject to a criminal charge that includes imprisonment of up to one year in county jail and or a fine up to $3,000. Miss. Code Ann. § 97-13-37. The County Attorney Defendants have "full responsibility" for prosecuting such offenses within their respective jurisdictions. *Id.* at § 19-23-11. S.B. 2358 creates a reality where a voter can rely on "anyone of [their] choice" to help them fill out the ballot, but then cannot have that same person assist with an equally critical part of the voting process—returning the ballot—if they do not fit within narrow categories.

## II.  IMPACT OF S.B. 2358 ON PLAINTIFFS

S.B. 2358 will disenfranchise some voters altogether. Other voters will be unable to rely on the person they most trust and would choose first to return their ballot. Potential assisters will face prosecution or be chilled from assisting because of the risk of prosecution. For example, Mr. Whitley relies on Ms. Gunn to assist him with returning his ballot. Whitley Dec. ¶ 17. Mr. Whitley has prosthetics but often suffers from phantom pain that makes it too unbearable for him to put them on. *Id.* ¶ 7. His legs also often become too swollen to fit in the prosthetics. *Id.* ¶ 8. On these days, Mr. Whitley cannot leave his home. *Id.* ¶ 9. He relies on others to assist him when this occurs—which includes getting the mail. *Id.* Even on days where Mr. Whitley can put on his prosthetics, it is still painful for him to walk. *Id.* ¶ 7. Additionally, Mr. Whitley's doctor warned him to walk as little as possible. *Id.* ¶ 8.

Voting is important to Mr. Whitley, but there have been times where he was unable to go to the polling place in prior elections because he was in too much pain. *Id.* ¶¶ 11-13. Mr. Whitley was able to vote again once Ms. Cunningham explained to him that he could vote by mail. *Id.* ¶ 14. In the 2022 election, Ms. Cunningham assisted him with the registration process and Ms. Gunn assisted him in completing and returning his ballot. *Id.*

7

Mr. Whitley recently received new prosthetics, and it will take him a while to get used to walking in them. *Id.* ¶ 10. This, and the daily struggle with phantom pain and swelling creates a strong possibility that when Mr. Whitley wants to vote, he will not be able to get to his mailbox. *Id.* ¶ 20. Section 208 guarantees Mr. Whitley that he can get assistance from the person of his choice for the entire voting process, from "'registration,'" to "'having such ballot counted properly.'" *OCA-Greater Houston*, 867 F.3d at 614-15 (quoting 52 U.S.C. 10310(c)(1)). Mr. Whitley specifically trusts Ms. Cunningham and Ms. Gunn to assist him with voting. *Id.* ¶ 17. If S.B. 2358 is not enjoined, Mr. Whitley can no longer rely on either of them. Thus, S.B. 2358 obstructs his federally guaranteed right to vote with the assistance of the people he trusts with his ballot.

S.B. 2358 prevents assisters like Ms. Cunningham and Ms. Gunn from helping others with voting, as they normally would, and threatens them with criminal penalties. Both live in Chickasaw County where they are known throughout the community as people to turn to learn about voting. However, Ms. Cunningham and Ms. Gunn do not just wait for people to ask for assistance, they actively go out and make sure every eligible person can vote. Gunn Dec. ¶¶ 6-8, 10. This includes reaching out to voters who are elderly, disabled, or even those who lack transportation to the polls and providing the individualized assistance that each voter needs, including the delivery of sealed ballots to a mailbox. They regularly assist friends, neighbors, and others in their community who are not their family or household members and who are not in their care. Gunn Dec. ¶ 16; Cunningham Dec. ¶¶ 7, 16.

For example, last election, Ms. Gunn assisted Ms. Mabeline Gates, who is an elderly woman with a vision impairment. Gunn Dec. ¶ 10. Ms. Gates previously did not vote because of her age and her disability. *Id.* Ms. Gunn explained to her that she was eligible to vote by mail and

assisted her with returning her absentee ballot. *Id.* Ms. Gates now lives in a nursing home but still relies on Ms. Gunn to assist her to vote because of the trust that was built. *Id.*

Another example is how Ms. Cunningham assists Mae Francis Collins who lives in Okolona and is homebound. Cunningham Dec. ¶ 11. Ms. Collins uses a walker and wheelchair but is almost entirely trapped in her home, due to the lack of an accessible path, and cannot reach her mailbox across the street without assistance. *Id*. Ms. Collins relies on others to bring her the mail because of her physical disabilities. *Id.* Ms. Cunningham most recently assisted Ms. Collins with the return of her absentee ballot in the 2022 election. *Id*. Ms. Collins trusts Ms. Cunningham to assist her with voting and cannot rely on anyone who meets the narrow exceptions under S.B. 2358 to help her. *Id.* Both Ms. Cunningham and Ms. Gunn want to assist voters like Ms. Collins and Ms. Gates in the upcoming elections but fear prosecution by Defendants under S.B. 2358. Gunn Dec. ¶¶ 10, 18. Their fear is based on a credible threat of prosecution—state officials have publicly touted the passage of S.B. 2358 and cast it as a top political priority.[5]

LWV-MS has a member who previously assisted voters returning their ballots in a detention facility. LWV-MS Dec. ¶ 14. The member wishes to continue to assist absentee voters in the 2023 elections but fears prosecution by Defendants and does not know if she can continue. *Id.* LWV-MS is also injured by S.B. 2358 because the organization now has to expend resources to create new voter education materials to warn its members and Mississippi voters about the law. *Id.* ¶ 13. LWV-MS also has to spend time and money to warn its members to not ask unauthorized persons to return ballots and to not return ballots themselves—even if they may be authorized— because S.B. 2358 does not clearly define who is permitted to return a ballot. *Id.*

---

[5] *See* Kayode Crown, *Mississippi Bans Handling Other Voters' Mail Absentee Ballots,* Mississippi Free Press (Mar. 23, 2023), https://www.mississippifreepress.org/32098/mississippi-bans-handling-other-voters-mail-absentee-ballots.

Lastly, DRMS constituents include every voter in Mississippi with disabilities because of their status as a P&A. DRMS Dec. ¶¶ 4-8. Voters with disabilities who need assistance will not be able to select the person they want to provide it. Some of these voters are at risk of disenfranchisement because they cannot rely on the few categories of individuals who are authorized under S.B. 2358. *Id*. ¶¶ 13-18. As some examples, people with mobility disabilities who rely upon friends, neighbors, or other community members for help with sending mail will be deprived of their choice of assistor or prevented from voting. *Id*. ¶ 14. Residents of congregate facilities who rely on facility staff to handle all of their mail will be disenfranchised altogether. *Id*. ¶¶ 15-16. DRMS is also injured by S.B. 2358 because it has to divert resources from other critical work such as responding to disability discrimination, promoting educational access, and investigating instances of nursing home abuse and neglect in order to develop and present new trainings to warn voters with disabilities about the law. *Id.* ¶¶ 24-25.

## ARGUMENT

## I.   PLAINTIFFS HAVE STANDING TO SEEK A PRELIMINARY INJUNCTION

To satisfy Article III standing, a plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *OCA-Greater Houston*, 867 F.3d at 610 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 56-61 (1992)). The "presence of one party with standing is sufficient to satisfy Article III's case or controversy requirement." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 53, 52 n.2 (2006); *see Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, n.9 (1977).

Organizations can establish standing through associational standing. *OCA-Greater Houston*, 867 F.3d at 610. An organization has associational standing when it brings a suit on

behalf of its members if "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (citation omitted).

Alternatively, a plaintiff has organizational standing when it brings a suit on its own behalf. Organizational injuries include "drain[s] on its resources resulting from [the organization] counteracting the effects of the defendant's actions." *La. ACORN Fair Hous. v. LeBlanc,* 211 F.3d 298, 305 (5th Cir. 2000) (citation omitted); *see Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982). Organizational standing "does not depend on the standing of the organization's members." *OCA-Greater Houston*, 867 F.3d at 610.

Plaintiffs meet the requirements for Article III standing. Mr. Whitley has standing because he cannot rely on a person of his choice to return his ballot. *See Democracy N.C. v. N.C. State Bd. of Elections*, 590 F. Supp. 3d 850, 872 (M.D.N.C. 2022) (holding that a voter could bring a Section 208 challenge even if the voter could rely on a permissible individual because that person was not the voter's choice). Both Ms. Cunningham and Ms. Gunn have standing because they have assisted in the past and want to assist now but cannot because they fear prosecution by Defendants. Individuals need not subject themselves to criminal prosecution before challenging the criminal statute's validity. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

DRMS and LWV-MS have both associational and organizational standing. Regarding DRMS, "[a] non-membership organization has associational standing where it possesses the 'indicia of membership.'" *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *2 (E.D.N.C. July 11, 2022) (quoting *Hunt*, 432 U.S. at 344). Courts

in this district and others have held that P&A's have associational standing to pursue claims on behalf of individuals with disabilities. *See, e.g., Advoc. Ctr. for Elderly & Disabled v. La. Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 595 (E.D. La. 2010); *Disability Rts. N.C.*, 2022 WL 2678884, at *2; *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1171 (M.D. Ala. 2016). LWV-MS has at least one member who wants to assist voters returning their ballots, but fears prosecution from the Defendants. LWV-MS Dec. ¶ 14. The interest LWV-MS seeks to protect is germane to its voter outreach work, and the member need not participate as an individual plaintiff in this lawsuit.

Regarding organizational standing, both DRMS and LWV-MS are and will have to divert and spend additional time, effort, and money to create new materials to educate its members and other Mississippi voters about S.B. 2358. *See* DRMS Dec. ¶¶ 20-26; LWV-MS Dec. ¶ 13; *see OCA-Greater Houston*, 867 F.3d at 612. LWV-MS also has to divert resources to warn its members to not assist voters—even if they may be authorized—because S.B. 2358 does not clearly define the categories of persons permitted to return ballots. LWV-MS Dec. ¶ 13.

Additionally, Plaintiffs have standing to bring this claim against both state officials. Defendant Lynn Fitch is the Attorney General of the State of Mississippi and is responsible for "interven[ing] [and arguing] the constitutionality of any statute when notified of a challenge thereto." Miss. Code Ann. § 7-5-1. Defendant Michael Watson, as Secretary of State of Mississippi, is the chief election officer. *Id.* at § 23-15-211.1. Secretary Watson has the authority to promulgate rules regarding absentee voting. 1 Miss. Admin. Code Pt. 17 *et seq.*; Miss. Code Ann. § 23-15-639(2). He provides guidance to county officials regarding absentee voting through the "County Elections Handbook."[6] Part of the relief Plaintiffs are requesting is for him to clarify

---

[6] *See County Elections Handbook,* Miss. Sec'y of State (Oct. 2020), https://www.sos.ms.gov/sites/default/files/election_and_voting/County_Elections_Handbook_Final.pdf .

that voters may still seek assistance, and to rescind any instructions that prevents it. Thus, Plaintiffs have standing to bring this injunction against all the Defendants.

## II.   S.B. 2358 CONFLICTS WITH SECTION 208 OF THE VRA AND SHOULD BE ENJOINED.

A preliminary injunction should issue because Plaintiffs are likely to succeed in showing that Section 208 preempts S.B. 2358; Plaintiffs are likely to suffer multiple forms of irreparable harm, including potential disenfranchisement, inability to receive assistance from individuals of their choice, and inability to provide assistance to voters; the public interest favors allowing voters to return their completed ballots and removing unlawful barriers to voting; and the balance of the equities favors maintaining the status quo that allows voters to vote using methods that have been available for decades. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

### a.   Plaintiffs are likely to succeed on the merits of the claim that S.B. 2358 is preempted by Section 208 of the VRA.

The Supremacy Clause of the United States Constitution "invalidates state laws that 'interfere with or are contrary to' federal law." *Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 82 (1824)). Here, by sharply limiting who can collect or deliver a completed ballot, S.B. 2358 criminalizes a form of assistance that Congress determined should be available to voters. Through Section 208, Congress has determined that voters must have broad discretion to ask someone of their choice for help—unless that person is their employer or labor union. *See* 52 U.S.C. § 10508. S.B. 2358 now dramatically limits voters' options, in contravention of the careful balance that Congress has struck. The statute therefore "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and is conflict preempted. *Arizona v. United States*, 567 U.S. 387, 406

13

(2012) (citation omitted); *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 534 (W.D. Tex. 2022) (citing *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016)).

### i. Fifth Circuit precedent compels the conclusion that Section 208 preempts S.B. 2358.

The text of Section 208 is clear: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. In *OCA-Greater Houston*, the Fifth Circuit held that voters may receive "assistance to vote" during all of the stages "necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration . . . or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast. . . ." 867 F.3d at 614-15 (quoting 52 U.S.C. 10310(c)(1)). In Mississippi, because an absentee ballot must be returned by mail in order to be counted, Miss. Code Ann. § 23-15-719, the act of placing a ballot in the mail is undoubtedly a critical step of the voting process to which voters are entitled to assistance under Section 208.[7]

The Fifth Circuit's preemption analysis in *OCA-Greater Houston* controls here. 867 F.3d 604. In that case, Texas restricted voters' ability to have someone of their choice provide language assistance, requiring all interpreters to be a registered voter of the county in which the voter resides. *Id.* at 608. As a result, a voter was denied her preferred assistance (her son, who was not a registered

---

[7] Numerous federal courts have concluded that assistance under Section 208 extends to the delivery of ballots. *See Carey v. Wis. Elections Comm'n*, No. 22-CV-402-JDP, 2022 WL 3910457, at *9 (W.D. Wis. Aug. 31, 2022) (concluding that the "VRA requires that plaintiffs be allowed to choose a person to assist them with mailing or delivering their absentee ballot."); *Disability Rts. N.C. v. N.C. State Bd. of Elections (Disability Rts. II)*, 602 F. Supp. 4d 872, 879 (E.D.N.C. 2022) (holding that the VRA's definition of "voting" includes the delivery of an absentee ballot); and *Democracy N.C.*, 590 F. Supp. 3d at 871 (same).

voter). *Id*. at 608-09. The Fifth Circuit accordingly held that the state's restriction on who may provide language assistance "impermissibly narrow[ed] the right guaranteed by Section 208 of the VRA" and is preempted. *Id*. at 615. In reaching that decision, the Fifth Circuit adopted the plaintiffs' "unambiguous" textual interpretation: that "Section 208 guarantees to voters [the] right to choose *any person they want*, subject only to employment-related limitations, to assist them throughout the voting process." *Id.* at 614 (emphasis added); *see La Union del Pueblo Entero*, 604 F. Supp. 3d at 533-34 (applying *OCA-Greater Houston*).

If S.B. 2358 goes into effect, it would "impermissibly narrow" the right guaranteed by Section 208 in a similar way—but to an even greater degree than the Texas law struck down in *OCA-Greater Houston*. Just as the voter in *OCA-Greater Houston* preferred to receive assistance from her son, Mr. Whitley and other voters want to rely on people they trust, like Ms. Gunn and Ms. Cunningham, to deliver their ballots. S.B. 2358, however, would criminalize that assistance, because Mr. Whitley and others would be seeking help from someone other than their family or household member or caregiver. Because S.B. 2358 is an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as set forth in Section 208 of the VRA, it is preempted. See *Arizona*, 567 U.S. at 406 (citations omitted).

Traditional principles of statutory interpretation confirm the Fifth Circuit's interpretation of Section 208. The text of Section 208 is not only clear but highly specific: eligible voters "may be given assistance by a person of the voter's choice," except for "the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. When Congress "'explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980))).

Similarly, under the canon *expressio unius est exclusio alterius*, "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002). Here, Congress used broad language to describe the voters' right to choose and then specified narrow exclusions for assistance provided by the voter's employer or union—and no one else. Mississippi's sweeping restrictions on ballot delivery assistance therefore conflict directly with the broad discretion that Congress conferred on voters in Section 208.[8]

Courts outside of the Fifth Circuit have also interpreted Section 208 to allow voters to have "unfettered choice over who may assist them with the voting process." *Disability Rts. II*, 602 F. Supp. 3d at 877; *see also Arkansas United v. Thurston*, No. 5:20-CV-5193, 2022 WL 4097988, at *16 (W.D. Ark. Sept. 7, 2022); *Democracy N.C. v. N.C. State Bd. of Elections (Democracy II)*, 476 F. Supp. 3d 158, 234-36 (M.D.N.C. 2020); *Carey*, 2022 WL 3910457, at *2; *United States v. Berks Cnty.*, 277 F. Supp. 2d 570, 584 (E.D. Pa. 2003); *Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 690 (W.D. Pa. 2003); *Am. Ass'n of People With Disabilities v. Hood*, 278 F. Supp. 2d 1345, 1356 (M.D. Fla. 2003).

For example, in *Disability Rights North Carolina*, the court granted summary judgment and enjoined several restrictions on absentee ballot assistance, including (1) a requirement that only parents, legal guardians, and near relatives of a voter may submit absentee ballot requests on their behalf, (2) a prohibition on nursing home or hospital employees requesting or marking an absentee ballot for a voter, and (3) a requirement that only near relatives, parents, or legal guardians

---

[8] Likewise, Plaintiffs' reading of Section 208 accords with the legislative canon that remedial statutes (such as the VRA) are to be construed broadly. *Peyton v. Rowe*, 391 U.S. 54, 65 (1968).

of the voter may mail their absentee ballot. 2022 WL 2678884, at *6. In general, "[f]ederal courts have shown little tolerance for any narrowing of the Section 208 right to assistance with the voting process." *Disability Rts. II,* 602 F. Supp. 3d at 878 ("Congress only included two categories of excluded assistants in the statutory text, and if Congress intended to exclude more categories, or to allow states to exclude more categories, it could have said so."). That reluctance to narrowly construe a remedial, civil rights statute applies equally here. *See also Democracy II,* 476 F. Supp. 3d at 234 (enjoining similar absentee ballot provision as preempted by Section 208).

### ii. Section 208's legislative history confirms that Congress intended to grant voters the right to seek assistance from any person of their choice.

To the extent that there is any doubt, the legislative history behind Section 208 confirms the textual interpretation above. *See Wooden v. United States*, 142 S. Ct. 1063, 1072 (2022). As courts have recognized, in enacting Section 208, the Senate Judiciary Committee found that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting" and that "many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice." *E.g.*, *Thurston*, 2022 WL 4097988, at *7, 16 (quoting S. Rep. No. 97-417, at 62 (1982)); *see also Berks Cnty.*, 277 F. Supp. 2d at 580.

The Committee concluded that to avoid denial or infringement of the right to vote, voters with disabilities or limited language abilities "must be permitted to have the assistance of a person of their own choice." S. Rep. No. 97-417, at 62 (1982). Respecting the voter's choice is the "only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter." *Id*. "To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens." *Id.* The report also contemplated using preemption to protect the rights guaranteed by Section 208. *Id*. at 63. The Committee also gave an example of what would be preempted: "a

17

procedure could not deny the assistance at some stages of the voting process during which assistance was needed." *Id*.

Mississippi's own absentee voting laws, until the enactment of S.B. 2358, largely tracked that understanding of Section 208. As mentioned above, absentee voters who needed assistance filling out the ballot could select virtually "anyone of [their] choice…." Miss. Code Ann. § 23-15-631(f). Those who vote in person can also get assistance from "a person of [their] choice…." Miss. Code Ann. § 23-15-549.

In short, the text and history of Section 208, along with binding Fifth Circuit precedent and the weight of persuasive authority, lead to the inescapable conclusion that S.B. 2358 runs afoul of Section 208 and is preempted.

### b.  Plaintiffs are likely to suffer irreparable harm.

Plaintiffs are "likely to suffer irreparable harm" absent an injunction. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Irreparable harm refers to harm for which there is no adequate remedy at law. *Id*. "The right to vote and have one's vote counted is undeniably a fundamental constitutional right, the violation of which cannot be adequately remedied at law or after the violation occurred." *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 219 (W.D. Tex. 2020) (citing *Reynolds v. Sims*, 377 U.S. 533, 554 (1964)); *see League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). "[O]nce the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin th[ese] law[s]." *League of Women Voters of N.C.*, 769 F.3d at 247. Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 295 (5th Cir. 2012); *see also De Leon v. Perry*, 975 F. Supp. 2d

632, 663 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015); *Democracy II,* 476 F. Supp. 3d at 236 (Section 208 injunction).

Beyond the risk of complete disenfranchisement, Plaintiffs who are voters with disabilities face irreparable harm even if they ultimately find a way to vote, but experience additional burdens to doing so. *Cf. Westchester Disabled on the Move, Inc. v. Cnty. of Westchester*, 346 F. Supp. 2d 473, 477-78 (S.D.N.Y. 2004) (denying disabled voters access to in-person voting "den[ies] them as much time as other voters to consider their choice" of candidate and requires them to undergo extra steps to vote absentee that create "hassle"). Irreparable harm exists where, as here, voting becomes so burdensome for citizens with disabilities that they may be "dissuaded from attempting to vote at all." *Id.*

Finally, Plaintiffs who would usually assist voters will lose opportunities to do so under S.B. 2358; those missed opportunities to help voters cast their ballots constitute irreparable harm because unassisted voters cannot cast their ballots once the relevant election has passed and those opportunities for voter engagement will have been lost forever. *See Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 663-64 (S.D. Ind. 2018), *aff'd sub nom. Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019). Similarly, the potential fear of prosecution potential assisters face also constitutes irreparable harm. *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1269 (11th Cir. 2012); *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1309 (S.D. Fla. 2008).

Here, S.B. 2358 would infringe on the rights of voters like Mr. Whitley to select someone of their choice. The law also irreparably harms DRMS, because many of their constituents— Mississippi voters with disabilities—will be disenfranchised. As for Ms. Cunningham, Ms. Gunn, and at least one LWV-MS member, they fear prosecution and cannot continue to assist voters

without the threat of imprisonment. The law also frustrates LWV-MS's and DRMS's missions by diverting resources. Thus, Plaintiffs they will face irreparable harm if S.B. 2358 takes effect.

### c.  A preliminary injunction will serve the public interest.

An injunction would ensure that Mississippi voters with a disability or literacy impairment can nonetheless exercise their fundamental right to vote and would prevent voter confusion before S.B. 2358 goes into effect. *Obama for Am. v. Husted,* 697 F.3d 423, 437 (6th Cir. 2012) (holding that public interest favors "permitting as many qualified voters to vote as possible"); *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1224 (N.D. Fla. 2018) ("Quite simply, allowing for easier and more accessible voting for all segments of society serves the public interest."). "The fundamental right to vote is one of the cornerstones of our democratic society . . . [t]he threatened deprivation of this fundamental right can never be tolerated." *Murphree v. Winter*, 589 F. Supp. 374, 382 (S.D. Miss. 1984) (finding that granting a preliminary injunction requiring access to absentee ballot would "clearly . . . not disserve the public interest."); *see also Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.,* 88 F.3d 274, 280 (5th Cir. 1996) (holding that where an enactment is unconstitutional, "the public interest [is] not disserved by an injunction preventing its implementation"). Moreover, the State has no interest in defending provisions that violate federal law. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest.").

### d.  The balance of equities favors granting a preliminary injunction.

The balance of equities weighs heavily in favor of an injunction. Plaintiffs' injunctive relief to maintain the status quo, under which voters who suffer from a disability or blindness or who cannot read or write may continue to select the assister of their choice in the upcoming elections. Defendants will not face any harm in being enjoined from altering the status quo to enforce an

unlawful statute. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (holding that the "state is 'in no way harmed by the issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional.'" (citation omitted)). Rather, the balance of the equities "favors Plaintiffs where, as here, the injunction is intended to foreclose application of restrictions likely to be found contrary to preeminent federal statutory law designed to help the neediest of this state's citizens." *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 651 (M.D. La. 2015), *aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477 (5th Cir. 2016), *opinion withdrawn and superseded*, 862 F.3d 445 (5th Cir. 2017), and *aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017).

Moreover, Plaintiffs' motion does not raise any *Purcell* concerns. If anything, the relevant considerations favor a preliminary injunction. As the Supreme Court and the Fifth Circuit have explained, *Purcell* aims to prevent voter confusion by "preserving the status quo on the eve of an election." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014). That principle does not bar relief three reasons: (i) a preliminary injunction here would preserve the longstanding status quo that a voter may receive assistance from an individual of their choice, (ii) voting in Mississippi does not commence until August, and (iii) neither S.B. 2358 nor its injunction poses logistical challenges to implement.

First, S.B. 2358 does not take effect until July 1, 2023, and is therefore *not* the status quo deserving of protection. The actual status quo is the state of affairs that has existed since at least 1982, when Section 208 was first enacted to allow voters to seek assistance from persons of their choice. *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 16-17 (1st Cir. 2020) (declining to reinstate witness requirement for mail ballots under *Purcell* because "the status quo (indeed the

only experience) for most recent voters is that no witnesses are required"); *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 368-69 (9th Cir. 2016) ("Every other election cycle in Arizona has permitted the collection of legitimate ballots by third parties to election officials. So, the injunction in this case . . . restores the *status quo ante* to the disruption created by the Arizona legislature that is affecting this election cycle for the first time."). Indeed, by bringing suit to challenge a new law prior to its effective date, Plaintiffs seek a classic "prohibitory injunction," which "seek[s] to maintain the status quo." *League of Women Voters of N.C.* 769 F.3d at 236.

Second, Plaintiffs diligently commenced this action more than a month before S.B. 2358's effective date, which leaves ample time for judicial relief prior to the next election. *See Feldman*, 843 F.3d at 368 ("[U]nlike the circumstances in Purcell and other cases, plaintiffs did not delay in bringing this action."). This is far from the typical *Purcell* case, which involves late-breaking judicial intervention "where an impending election is imminent and a State's election machinery is already in progress." *See Veasey*, 769 F.3d at 893 (explaining logistical challenges with complying with district court order dated October 11, 2014, when early voting was commencing on October 20).

Third, S.B. 2358 is not a complex statute, and neither its implementation nor its injunction presents logistical challenges to election administration. Instead, by its plain text, S.B. 2358 criminalizes private individuals who knowingly collect or transmit ballots. The statute does not require poll managers to reject any improperly collected votes. *See Feldman*, 843 F.3d at 368 ("[T]he only effect of H.B. 2023 . . . is to make the collection of legitimate ballots by third parties a felony. So . . . the injunction at issue here does not involve any change at all to the actual election process."). Accordingly, Mississippi need not train or re-train elections officials or implement new elections procedures in response to a preliminary injunction. *Cf. Veasey*, 769 F.3d at 893 (staying

22

injunction under *Purcell* because the state needed to "adequately train its 25,000 polling workers at 8,000 polling places about the injunction's new requirements"). If S.B. 2358 is enjoined as Plaintiffs have requested, the State need not change a thing about the administration of any upcoming elections. And meanwhile, enjoining S.B. 2358 would save the State resources it might otherwise devote to the enforcement of an unlawful statute.

In short, *Purcell* is inapplicable, and the equities favor Plaintiffs. The State's attempt to alter its own longstanding practices by enacting a change months before an election is more likely to cause voter confusion than an injunction before the law takes effect. Even if some individuals are confused because they expected S.B. 2358 to be in effect for this election cycle, one "cannot imagine that it will pose any difficulty not to have to comply with it." *Gorbea*, 970 F.3d at 17.

Federal law, including binding Fifth Circuit precedent, unequivocally protects Mississippi voters who are in critical need of assistance due to disability, blindness, or inability to read or write, The State's unlawful attempt to deprive voters of that assistance should be enjoined before it disenfranchises voters in the upcoming August primary and November election.

## **CONCLUSION**

For the reasons stated herein, the Court should grant Plaintiffs' Urgent and Necessitous Motion for Preliminary Injunction.

DATED: May 31, 2023                              Respectfully submitted,

/s/ *Leslie Faith Jones*
SOUTHERN POVERTY LAW CENTER                AMERICAN CIVIL LIBERTIES UNION OF
Leslie Faith Jones (Miss. Bar. No. 106092)   MISSISSIPPI FOUNDATION
111 East Capitol Street, Suite 280           Joshua Tom (Miss. Bar No. 105392)
Jackson, MS 39201                            Claudia Williams Hyman*
(601) 948-8882                               101 South Congress Street
leslie.jones@splcenter.org                   Jackson, MS 39201
                                             (601) 354-3408

Bradley E. Heard*
Sabrina Khan*
Jess Unger*
Ahmed Soussi*
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(334) 213-8303
*bradley.heard@splcenter.org*
*sabrina.khan@splcenter.org*
*jess.unger@splcenter.org*
*ahmed.soussi@splcenter.org*

MISSISSIPPI CENTER FOR JUSTICE
Robert McDuff (Miss. Bar No. 2532)
210 E. Capitol St., Suite 1800
Jackson, Mississippi 39201
(601) 259-8484
rmcduff@mscenterforjustice.org

JTom@aclu-ms.org
cwilliamshyman@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ming Cheung*
Casey Smith*
Ari J. Savitzky*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
csmith@aclu.org
asavitzky@aclu.org
slakin@aclu.org

DISABILITY RIGHTS MISSISSIPPI
Greta Kemp Martin, (Miss. Bar No. 103672)
Katherine Henderson, (Miss. Bar No. 104522)
5 Old River Place, Suite 101
Jackson, MS 39202
Office: (601)968-0600
Facsimile: (601)968-0665
gmartin@drms.ms
khenderson@drms.ms

*Attorneys for Plaintiffs*

*Pro Hac Vice Forthcoming

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 31st day of May, 2023, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

/s/ <i>Leslie Faith Jones</i>
Leslie Faith Jones

Dated: May 31, 2023