IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DISABILITY RIGHTS MISSISSIPPI, LEAGUE OF WOMEN VOTERS OF MISSISSIPPI, WILLIAM EARL WHITLEY, MAMIE CUNNINGHAM, and YVONNE GUNN,

*Plaintiffs*,

v.

LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi; MICHAEL D. WATSON, JR., in his official capacity as Secretary of State of Mississippi; GERALD A. MUMFORD, in his official capacity as Hinds County Attorney; and ELIZABETH AUSBERN, in her official capacity as Chickasaw County Attorney;

*Defendants*.



Civil Action No.

## DECLARATION OF MAMIE CUNNINGHAM

Pursuant to 28 U.S.C. § 1746, I, Mamie Cunningham, declare as follows:

1. I am over the age of eighteen, and I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2. I am a Plaintiff in the above-captioned case.

3. I am a registered voter, and I have never been convicted of a crime.

1

4. I am 83 years old, an African-American woman, and a lifelong resident of Okolona, MS. I am a retired public-school teacher, with a Master's degree in education from Mississippi State.

5. Ever since I was 19 years old, I have been active in registering voters and advocating for civil rights in Mississippi. When I was a college student at Rust College in 1964, I worked with Stokely Carmichael and other Freedom Riders who came to campus to organize voter registration efforts. That same year, I rode with Fannie Lou Hamer, Ed King, Aaron Henry, and other members of the Freedom Democratic Party to attend and later protest at the National Democratic Convention, which had seated an all-White, all-male delegation (of over 40 members) from Mississippi.

6. After returning to Mississippi from the convention, I continued my efforts to organize and register voters. This work is important to me because I recognize how difficult it is to vote in Mississippi, and our politics are broken because not enough people are able to access the right to vote.

7. Since approximately 2000, I (and later joined by my friend, Yvonne Gunn) have assisted members of our local community, who suffer from blindness, immobility, illiteracy, and old age, with absentee voting in Mississippi. Many of those voters live alone (or their household members are unable to assist due to impairments of their own) and have nobody else who can assist them. They trust us with their ballots, because we have known them almost our entire lives. I am widely known in my community as someone who is knowledgeable about elections voting, and people frequently contact me for advice and assistance.

8. I estimate that I assist approximately ten voters in Chickasaw County each year.

9. The assistance I provide occurs over several weeks during the primary and again during the general election. The amount of help I provide depends on the nature and extent of the disability that each voter has, but in general, I begin by helping the voter call the circuit clerk to request an absentee ballot application and ballot. Once the ballot arrives, I visit the voter in their home, because they often are unable to leave their house due to a disability. If necessary, I read the candidates and offices to the voter, and they indicate who they want to vote for. I help them fill out the ballot and make sure that they sign in the right places. I help them seal the envelope and make sure they remember to sign across the flap in the right location. I make sure that the envelope has the correct postage, and I (physically) place the completed ballot in the mailbox on the voter's behalf.

10. I believe that, without my assistance, many of the voters I assist otherwise would not be able to cast their ballot.

11. For instance, I have helped an 86-year-old woman, Mae, vote, because she lives alone and is not able to physically leave her house. Mae cannot move without a walker or wheelchair, but there is no path or porch leading to her house that could accommodate a walker or wheelchair. I personally have fallen while trying to enter her home due to the lack of a walkable path, and I do not believe that Mae is able to leave her house to retrieve or deliver a ballot, let alone vote in person. Her mailbox is across the street from her home, and she needs help to retrieve her mail due to her disability. Mae lives alone and does not have a caregiver; she has one son, Arthur, who recently had a stroke and is now in a nursing home; she has another son who lacks the mental capacity to help her; and she has a daughter who does not communicate with her. I most recently helped Mae

vote in the 2022 election. She trusts me with her ballot, and she does not have a family member or a household member or a caregiver who could help her.

12. I, with Mae's assistance, have previously helped her son Arthur vote when he was living with her. I intend to continue helping Arthur vote now that he is at the nursing home. Arthur has been physically disabled for nearly as long as I have known him, but he suffered a stroke last year, and he now has even greater impairments than before. He is not able to write or hold a pen, and he would not be able to request, sign, or deliver an absentee ballot without assistance. Arthur trusts Mae and me with his ballot, and he does not have the same relationship with nursing home staff, even if the staff were willing and legally permitted to assist him with his ballot.

13. I have also assisted a blind woman, Elsie, and her recently deceased husband, who was illiterate. Elsie lives a few blocks away from Mae, and I also believe that neither she nor her husband would have voted but for my assistance. Elsie, due to her visual impairment, would not be able to dial the circuit clerk's office without my assistance. Nor could she read the ballot without my assistance. Elsie told me recently that, if I do not help her vote this year, she would not vote.

14. Elsie and I are distant relatives. To the best of my knowledge, I believe my grandfather and Elsie's grandfather were half-brothers, which would make us half second-cousins. I am not sure if I would qualify as Elsie's "family member" under S.B. 2358, which does not make clear whether it refers to the nuclear family or something else.

15. I have friends in other parts of Mississippi who engage in similar efforts to help people vote absentee.

16. If S.B. 2358 were allowed to take effect, I could not legally help people like Mae and Arthur, because I am not their family member, household member, or caregiver. While I am a distant relative of Elsie's, I still fear prosecution if I were to help her vote, because S.B. 2358 does not define "family member," and I do not reside with her or take care of her.

17. I believe that several of the voters I have assisted over the years would not have been able to vote if S.B. 2358 had been in effect.

18. I also believe that, if I do not continue helping voters in my community cast an absentee ballot this year because S.B. 2358 goes into effect, several of them would not be able to vote.

19. Voting in Mississippi is difficult due to various requirements and restrictions that have been put into place, which makes restrictions on voter assistance like S.B. 2358 particularly harmful. Without assistance, it may be nearly impossible for voters with disabilities from complying with all of those requirements. Mississippi does not have mail voting and instead requires voters to affirmatively request an absentee ballot application, which then has to be delivered in the mail, and voters must provide a reason for voting absentee. Because of slow mail service in rural communities like mine, mail often takes a week or more to arrive, and it makes the timeframe for requesting and submitting absentee ballots particularly challenging. Requirements such as signing on the envelope flap are easy to overlook, and voters, including those I assist, may forget to do so unless they are reminded. Furthermore, I have observed the counting of absentee ballots, and I know that signatures are heavily scrutinized and must meet precise requirements; ballots may get rejected if the signature does not cross the flap, which may

happen because the signature line is not completely aligned with the envelope flap and some signatures, depending on their placement, may be too short or small to contact the flap.  Voting in person, even if possible for voters who are able to leave their house, is difficult, particularly in rural areas, because there is no early voting in Mississippi.

20. S.B. 2358 is also likely to permanently disenfranchise some of the voters I assist.  If a voter misses an election because they could not obtain assistance in time, Mississippi's new voter purge law, H.B. 1310, may cause them to lose their voter registration.  Based on my decades of experience in voter registration, reaching and re-registering voters who have disabilities and who live alone would be extremely challenging.

21. Helping other voters is important to me, because I have fought for voting and other civil rights my entire adult life.  It is especially critical to provide assistance to voters today, because the state continues to erect new barriers to voting, which disproportionately disenfranchise voters who are illiterate, blind, or immobile or who suffer from any other challenge or disability.

22. I fear that I would be subject to criminal prosecution and punishment for assisting voters if S.B. 2358 takes effect.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30 day of May 2023.

_Mamie Cunningham (May 30, 2023 20:30 EDT)_

Mamie Cunningham