IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MISSISSIPPI, LEAGUE OF WOMEN VOTERS OF MISSISSIPPI, WILLIAM EARL WHITLEY, MAMIE CUNNINGHAM, and YVONNE GUNN, <br><br> *Plaintiffs*, <br><br> v. <br><br> LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi; MICHAEL D. WATSON, JR., in his official capacity as Secretary of State of Mississippi; GERALD A. MUMFORD, in his official capacity as Hinds County Attorney; and ELIZABETH AUSBERN, in her official capacity as Chickasaw County Attorney; <br><br> *Defendants*. | Civil Action No. 3:23-cv-00350-HTW-LGI |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

i

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION..............................................................................................................1

ARGUMENT .....................................................................................................................2

   I.  ORGANIZATIONAL PLAINTIFFS HAVE ASSOCIATIONAL AND ORGANIZATIONAL STANDING TO SEEK AN INJUNCTION…….…………3

      a.  ASSOCIATIONAL STANDING………………………………………………..3

      b.  ORGANIZATIONAL STANDING…………………………………………….4

   II.  PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS…………5

   III.  REMAINING INJUNCTION FACTORS FAVOR PLAINTIFFS. ..........................10

   IV.  PLAINTIFFS' REQUESTED RELIEF IN NECESSARY AND APPROPRIATE….10

CONCLUSION ................................................................................................................12

CERTIFICATE OF SERVICE ........................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                     Page(s)

*Allen v. Milligan,* No. 21-1086,
   2023 WL 3872517 (U.S. June 8, 2023) ................................................................................. 7

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................................................................ 5

*Arkansas United v. Thurston*,
   2022 WL 4097988 (W.D. Ark Sept. 7, 2022) …..................................................................... 9

*Arlene Ocasio v. Comision Estatal de Elecciones*,
   486 F. Supp. 3d 478 (D.P.R. 2020) .................................................................................. 11, 12

*Ass'n of American Physicians & Surgeons, Inc. v. Texas Medical Board*,
   627 F.3d 547 (5th Cir. 2010) ................................................................................................... 3

*Carey v. Wisconsin Elections Commission*,
   624 F. Supp. 3d 1020 (W.D. Wis. 2022) ................................................................................ 9

*Clark v. Edwards*,
   468 F. Supp. 3d 725 (M.D. La. 2020) ..................................................................................... 5

*Common Cause Indiana v. Lawson*,
   937 F.3d 944 (7th Cir. 2019) ................................................................................................... 4

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.*,
   879 F.3d 462 (2d Cir. 2018) .................................................................................................... 8

*Democracy North Carolina v. North Carolina State Board of Elections*,
   476 F. Supp. 3d 158 (M.D.N.C. 2020) ................................................................................... 9

*DiPietrae v. Philadelphia*,
   666 A.2d 1132 (Pa. Commw. Ct. 1995) ................................................................................. 9

*Disability Rights North Carolina v. North Carolina State Board of Elections (Disability Rights II)*,
   602 F. Supp. 3d 872 (E.D.N.C. 2022) .................................................................................... 9

*Disability Rights North Carolina v. North Carolina State Board of Elections*,
   2022 WL 2678884 (E.D.N.C. July 11, 2022) ............................................................... 3, 9, 11

*Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*,
   971 F.3d 340 (D.C. Cir. 2020) .................................................................................................. 7

*Fish v. Kobach*,
   309 F. Supp. 3d 1048 (D. Kan. 2018) ..................................................................................... 12

*Fish v. Kobach*,
   318 F.R.D. 450 (D. Kan. 2016) ............................................................................................... 11

*Fish v. Schwab*,
   957 F.3d 1105 (10th Cir. 2020) ............................................................................................... 12

*Garcia v. Sessions*,
   856 F.3d 27 (1st Cir. 2017) ........................................................................................................ 8

*Hernandez v. Williams, Zinman & Parham PC*,
   829 F.3d 1068 (9th Cir. 2016) ................................................................................................... 8

*Hoyt v. Lane Construction Corporation.*,
   927 F.3d 287 (5th Cir. 2019) ..................................................................................................... 9

*La Unión del Pueblo Entero v. Abbott*,
   614 F. Supp. 3d 509 (W.D. Tex. 2022) ............................................................................ 3, 4, 5

*League of Women Voters of North Carolina v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ................................................................................................... 11

*Lee v. Weisman*,
   505 U.S. 577 (1992) .................................................................................................................... 8

*Mixon v. One Newco, Inc.*,
   863 F.2d 846 (11th Cir. 1989) ................................................................................................... 8

*NCNB Texas National Bank v. Cowden*,
   895 F.2d 1488 (5th Cir. 1990) ................................................................................................. 10

*Obama for America v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ................................................................................................... 11

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ............................................................................................ Passim

*Priorities USA v. Nessel*,
   487 F. Supp. 3d 599 (E.D. Mich. 2020) ................................................................................... 9

*Priorities USA v. Nessel*,
  2022 WL 4272299 (E.D. Mich. Sept. 15, 2022) ..................................................1, 7

*Qualkinbush v. Skubisz*,
  826 N.E.2d 1181 (Ill. App. Ct. 2004) ........................................................................ 9

*Ray v. Texas*,
  2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ............................................................. 9

*Thomas v. Andino*,
  613 F. Supp. 3d 926 (D.S.C. 2020) ......................................................................... 11

*Transamerica Insurance Company v. South*,
  89 F.3d 475 (7th Cir. 1996) ....................................................................................... 8

*United Food & Commercial Workers Union Local 751 v. Brown Group., Inc.*,
  517 U.S. 544 (1996) ................................................................................................... 4

*United States v. Alabama*,
  778 F.3d 926 (11th Cir. 2015) ................................................................................... 7

*United States v. Berks County*,
  277 F. Supp. 2d 570 (E.D. Pa. 2003) ......................................................................... 9

*United States v. Franklin*,
  435 F.3d 885 (8th Cir. 2006) ..................................................................................... 8

*United States v. Naranjo*,
  259 F.3d 379 (5th Cir. 2001) ..................................................................................... 8

*United States v. Segura*,
  747 F.3d 323 (5th Cir. 2014) ................................................................................ 6, 7

**Other Authorities**

S. Rep. 97-417 .................................................................................................................. 9

*The Lost History of the "Universal" Injunction*,
  133 Harv. L. Rev. 920 (2020) .................................................................................. 12

**INTRODUCTION**

Defendants do not dispute that S.B. 2358 denies voters their right to seek assistance from any person of their choice, or that assisters could face criminal prosecution for helping voters with returning their absentee ballots, or that, as a result, many individuals who require assistance due to disability, blindness, or inability to read or write may be disenfranchised. The undisputed record therefore shows that Plaintiffs are likely to succeed on the merits of their claim under Section 208 of the Voting Rights Act ("VRA") and will suffer irreparable harm absent an injunction.

Defendants' attempts to evade Section 208 fail. For one, they rely on out-of-circuit outlier cases like *Priorities USA v. Nessel*, No. 19-CV-13341, 2022 WL 4272299 (E.D. Mich. Sept. 15, 2022), rather than controlling Fifth Circuit law. In fact, S.B. 2358 restricts voters' rights to an even greater extent than a Texas law that was held to be preempted by the "unambiguous language" of the VRA. *See OCA-Greater Houston v. Texas* ("*OCA*"), 867 F.3d 604, 614-15 (5th Cir. 2017).

Defendants also claim a public interest in enforcing S.B. 2358's restrictions on absentee ballot collection and return, but Congress already weighed those considerations and determined that voters who require assistance due to disability, blindness, or inability to read or write are legally entitled to seek help from someone of their choice, with only two exceptions: the person's employer or union. *See* 52 U.S.C. § 10508. S.B. 2358 seeks to second-guess Congress's calculus and "impermissibly narrows the right guaranteed by Section 208 of the VRA." *OCA*, 867 F.3d at 615. Defendants have no legitimate interest in violating federal law and disenfranchising potentially thousands of Mississippians in need of assistance.

Finally, Defendants cite no law supporting their arguments limiting relief to individual Plaintiffs, or opposing this Court's authority to order Defendants to issue public guidance about an injunction. Here, statewide injunctive relief is necessary to redress harms to Plaintiffs, as Plaintiff organizations conduct activities and have members and constituents throughout the state

1

who will be impacted by S.B. 2358. An injunction that requires Defendants to treat all voters equally is entirely proper; an injunction that would require different rules for different voters (and subject some voters to a rule that is likely contrary to federal law) would be deeply problematic. Courts also regularly require Defendants to inform the public about voting-related changes.

## ARGUMENT

Defendants rightfully do not contest the standing of the individual Plaintiffs.[1] And as discussed below, Defendants' arguments as to the organizational Plaintiffs' standing are without merit. Plaintiffs also have more than demonstrated a substantial likelihood of success on the merits, and the remaining factors weigh in favor of allowing voters to cast ballots in the same manner that they have for decades. Preserving that status quo would avoid the voter confusion and the chilling effect caused by S.B. 2358.[2]

---

[1] Sadly, Ms. Mae Francis Collins, one of the voters assisted by Plaintiff Mamie Cunningham, passed away at the age of 86, on or about June 8, 2023. Nevertheless, Ms. Cunningham's standing to maintain this action remains intact, as she intends to continue assisting other voters, including Ms. Collins' surviving son, Arthur. Dkt. 3-1 ¶ 11. The manner in which Ms. Collins would have been disenfranchised under S.B. 2358 continues to exemplify the challenges faced by elderly and disabled Mississippians, and this Court may continue to rely on the probative value of her experience—just as *OCA-Greater Houston* gave weight to the disenfranchisement of a deceased plaintiff. *OCA*, 867 F.3d at 608-09, 612-13.

[2] Apparently recognizing the vagueness of S.B. 2358, Defendants now cite (without actually adopting) the American Medical Association's definition of "caregiver," *i.e.*, someone with a "significant personal relationship" with a person with a disability and who "provides a broad range of assistance." Opp. at 2. However, that definition appears nowhere in the statute, and, even if formally adopted, remains ambiguous as to friends, neighbors, and institutional staff. Similarly, Defendants offer that a court may "apply the 'common, ordinary meaning'" of "caregiver," and "consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions." Opp. at 22. That argument only highlights the uncertainty of the definition, which puts Mississippians at risk of criminal prosecution if they misjudge the term's meaning.

2

I. **ORGANIZATIONAL PLAINTIFFS HAVE ASSOCIATIONAL AND ORGANIZATIONAL STANDING TO SEEK AN INJUNCTION.**

a. **Associational Standing**

Defendants neither dispute the first two elements of associational standing, Opp. (Dkt.17) at 13; nor do they contest the standing of the individual Plaintiffs. Moreover, Defendants acknowledge the valid organizational interests of the constituents and members of Disability Rights Mississippi ("DRMS") and League of Women Voters Mississippi ("LWV-MS") as voters and assisters. *See* Opp. at 9-10. Plaintiffs have also satisfied the final prong: the participation of constituents or members is unnecessary because the preemption claim can be resolved "without a fact-intensive-individual inquiry." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010). DRMS is Mississippi's Protection and Advocacy agency ("P&A") and is authorized by federal law to pursue legal action on behalf of the rights of individuals with disabilities in the State. 42 U.S.C. § 15043(a)(2)(A)(i); Dkt. 3-2 ¶¶ 4-5. Courts in this circuit and others have held that P&As have associational standing to bring claims on behalf of their constituents. Pls. Br. (Dkt. 3) at 11-12.

A preemption claim is a "question of law," Opp. at 3, regarding a statute's "purpose and intended effects," not the individualized circumstances of Plaintiffs' members or constituents. *Disability Rts. N.C. v. N.C. State Bd. Of Elections*, No. 5:21-CV-361-BP, 2022 WL 2678884, at *3 (E.D.N.C. July 11, 2022). Moreover, neither organization's claim is "premised upon a specific individual's asserted disability [low literacy, or assistance claim]" but rather, on the rights of all voters with disabilities or low-literacy and all LWV-MS assisters. *La Union del Pueblo Entero v. Abbott*, 614 F. Supp. 3d 509, 527 (W.D. Tex. 2022); *see* Dkt. 1 ¶¶ 29-38.

Notably, that final prong of associational standing is "solely prudential." *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 550. It focuses on "matters of administrative convenience and

efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Here, "[w]ithout question, it is more administratively convenient and efficient to assert such a challenge in a representative capacity," than to require constituents with disabilities to present their claims individually. *La Union del Pueblo Entero*, 614 F. Supp. 3d at 527.

### b. Organizational Standing

*OCA* forecloses Defendants' argument as to organizational standing as well. There, as here, the defendants argued that the plaintiff lacked standing because it was merely communicating new legal developments. *Id*. at 611. The Fifth Circuit rejected that argument, explaining that OCA-Greater Houston had standing because the challenged statute caused it to "spend extra time and money educating its members" on avoiding the effects of the state law. *OCA*, 867 F.3d at 610. The organization demonstrated standing by having gone "out of its way to counteract the effect" of the new law and "mitigat[e] its real-world impact on OCA's members and the public." *Id.* at 612.

Here, too, DRMS and LWV-MS have created additional materials and devoted time to warn voters and assisters about the ambiguous definition of "caregiver." Dkt. 3-2 ¶¶ 22-23; Dkt. 3-5 ¶¶ 13-14. DRMS has even been forced to forgo monitoring time-sensitive allegations of abuse and neglect to educate voters on the new law. Dkt. 3-2 ¶ 25. Thus, Defendants' argument that Plaintiffs would have done the same thing regardless of S.B. 2358 is untrue. Opp. at 11.

Moreover, an organizational plaintiff is injured even when the burden inflicted by Defendants' conduct takes the form of additional work related to the plaintiff's mission. *Common Cause Indiana v. Lawson*, 937 F.3d 944, 953-55 (7th Cir. 2019) (rejecting argument that the state merely gave Plaintiffs "more of the work they were created to do"). In *OCA*, the plaintiff's mission included promoting voter participation, and that mission was "perceptibly impaired" by the need

4

to explain the challenged law to voters during outreach efforts.[3] 867 F.3d at 610, 612. As the Fifth Circuit explained, the injury need not be "large" or "substantial," and here, the additional costs and difficulty imposed on DRMS and LWV-MS by S.B. 2358 are more than sufficient injuries. *E.g.*, Dkt. 3-2 ¶¶ 21-25. Dkt. 3-5 ¶¶ 12-13.

Just like the plaintiffs in *OCA*, the normal voter outreach and education and constituent protection work that DRMS and LWV-MS do have been "perceptibly impaired" because they now have to warn voters and assisters of criminal consequences under S.B. 2358. *OCA*, 867 F.3d at 612. Lastly, DRMS and LWV-MS do not need to "identify specific projects that they have placed on hold or otherwise curtailed." *La Union del Pueblo Entero*, 614 F. Supp. 3d at 529.

## II. PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS.

As the text of Section 208 and the Fifth Circuit's holding in *OCA* make clear, restrictions on voters' right to seek help from their preferred persons, other than the specific employment-related exclusions listed in Section 208, are preempted. *See* Pls. Br. at 15-16. Defendants offer *no* explanation for why the exclusions in Section 208 should not be construed as exhaustive, as required by traditional canons of construction. *See* Opp. at 20-21. Thus, under Section 208's plain text, virtually anyone can assist absentee ballot voters. *OCA*, 867 F.3d at 614-15. But under S.B. 2358, most such assisters would be committing a crime. S.B. 2358 is therefore a direct "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Arizona v. United States*, 567 U.S. 387, 406 (2012).

---

[3] Defendants rely heavily on *Clark v. Edwards*, 468 F. Supp. 3d 725 (M.D. La. 2020), Opp. at 10-11, which is distinguishable because the voter organizations there were challenging an *expansion* of voter access. *Id.* at 751 ("In the face of expanded voting access, it is more difficult for Plaintiffs to show that they have 'diverted significant resources to counteract the defendant's conduct.'").

Defendants argue that Section 208 offers "some wiggle room" or "latitude" to restrict voters' right to choose. Opp. at 19, 23. But even allowing such supposed "wiggle room," S.B. 2358 still dramatically constricts the universe of possible assisters, conflicting directly with Section 208. Indeed, the restrictions here are more severe than the preempted law in *OCA*. There, the Fifth Circuit found that a Texas provision, which required all interpreters to be registered voters in the county where they assist, "impermissibly narrow[ed] the right guaranteed by Section 208." *OCA*, 867 F.3d at 615. The law in *OCA* thus limited the universe of assisters to registered voters in each county (*i.e.*, many thousands of people) but S.B. 2358 is far more restrictive, excluding everyone except for a voter's family or household member or caregivers from assisting. *See* Pls. Br. at 15. S.B. 2358 is far beyond being salvaged by whatever "wiggle room" Defendants claim.

Nor do Plaintiffs "overstate" *OCA*'s holding, which is not limited to the meaning of "to vote." *See* Opp. at 15-16. The Fifth Circuit in *OCA* squarely determined that a voter may generally "choose any person they want" to assist them under Section 208, 867 F.3d at 614-15, and that determination was "necessary to the result" reached by the court. *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014). Absent a right to choose, there would have been no basis to challenge Texas's requirement that all interpreters be registered voters. *OCA*, 867 F.3d at 608.

As further confirmation that *OCA* rendered a holding as to voters' right to select any person of their choice, the parties there had differing interpretations of the right's scope, which the Fifth Circuit necessarily had to resolve. While Texas believed that Section 208 provided "near-unfettered choice of assistance," the plaintiffs specifically articulated that voters could choose anyone, "subject only to employment-related limitations." *Id.* at 614. Had the court adopted Texas's reading, it would have needed to explain the limits of that "near-unfettered choice" and whether Texas's requirement was permissible. The court instead adopted the plaintiffs'

6

interpretation and struck down Texas's restriction without further analysis, because it was not among Section 208's employment-related exceptions. *See id.* at 615. The Fifth Circuit thus agreed with (rather than assumed to be true) the plaintiffs' position in its application of governing law—and was therefore rendering a binding decision.[4] *Segura*, 747 F.3d at 328.

Defendants primarily pin their hopes on *Nessel*, 2022 WL 4272299, Opp. at 17, but that outlier case cannot overcome Fifth Circuit precedent. *Nessel* was wrongly decided, contrary to the weight of persuasive authority, and should not be followed. *See* Pls. Br. at 16-17. The court rested its decision on an observation that Section 208 allows voters to select "'*a* person of the voter's choice' – not '*any* person,' [and] not '*the* person'"—from which the court concluded that, while a voter is allowed to pick *someone*, they are not necessarily entitled to their top pick. *See* 2022 WL 4272299, at *10 (emphasis original). That rationale suffers from two fatal flaws.

First, the *Nessel* court wrongly assumed that "a" cannot mean "any." *See, e.g.*, *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) ("The plain meaning of the term 'an election' is 'any election.'"). In fact, the indefinite article "a" is often "purposefully used as a synonym for the word 'any.'" *E.g.*, *id.* at 933 (collecting Fifth and Eleventh Circuit cases). Examples are readily available: an instruction to "Pick a card" is the same as "Pick any card." The use of "a" to mean "any" was also common when Section 208 was enacted in 1982. *See CREW v. FEC*, 971 F.3d 340, 354 (D.C. Cir. 2020) ("'A' means 'one' or 'any' . . . [and] is not necessarily a singular term; it is more often used in the sense of 'any.'") (collecting dictionary definitions from

---

[4] Even if Texas and the plaintiffs could be viewed as having had the same position on voters' ability to choose, that only confirms that Plaintiffs' interpretation of Section 208 here is the settled understanding of Section 208, and that Defendants are seeking to effectuate a change in the law. As the Supreme Court recently held in *Allen v. Milligan*, courts should be reluctant to narrow longstanding interpretations of the Voting Rights Act. 599 U.S. __, No. 21-1086, 2023 WL 3872517, at *20 (U.S. June 8, 2023).

7

1976 to 1980).[5] *Nessel* overlooked this basic principle, which has been widely recognized, including by the Fifth Circuit.[6] *United States v. Naranjo*, 259 F.3d 379, 382 (5th Cir. 2001) ("'Such a violation' . . . refers to . . . *any* violation.").

Second, *Nessel* incorrectly concluded that Congress intended to narrow voters' choice by referring to "*a* person of the voter's choice" instead of "*the* person of the voter's choice." In fact, "a" is *more* capacious than "the," thus giving voters *greater* choice. *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1074 (9th Cir. 2016) ("Congress's use of the indefinite article 'a' . . . gives that term 'generalizing force.'"); *Mixon v. One Newco, Inc.*, 863 F.2d 846, 850 (11th Cir. 1989) (holding that use of "'*a* period of seven years' as opposed to '*the* period' indicates that *any* seven-year period . . . would suffice"). Using "the" in this context would have created ambiguity and arguably limited voters to being assisted by one specific person. *See CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) ("The use of the definite article 'the' indicates a singular . . . whereas the indefinite article 'any' or 'a' denotes multiple."). As Mr. Whitley's example illustrates, a voter may wish to seek help from different assisters at different times: he relied on Ms. Cunningham to register, but he depended on Ms. Gunn to mail his ballot. Dkt. 3-4 ¶ 14. Denying voters the ability to rely on multiple people would have been anomalous given Section 208's purpose of preserving voters' discretion. *See* Pls. Br. at 17-

---

[5] There is no indication that Congress intended the use of "a" here to mean "one" instead of "any"—and no court, to Plaintiffs' knowledge, has ever concluded that a voter may only be assisted by one person. Among other problematic scenarios, such an interpretation would disenfranchise voters if the original assister became unavailable at a later stage of the voting process.

[6] *E.g.*, *Lee v. Weisman*, 505 U.S. 577, 615 n.2 (1992) (Souter, J., concurring) ("[T]he indefinite article before the word 'establishment' is better seen as evidence that the Clause forbids *any* kind of establishment."); *Garcia v. Sessions*, 856 F.3d 27, 36–37 (1st Cir. 2017) ("As a matter of grammar, the word 'any' is not clearly more sweeping than is the word 'an.'"); *United States v. Franklin*, 435 F.3d 885, 889 (8th Cir. 2006) ("[T]he use of the indefinite article 'an' . . . to describe the condition . . . implies that other conditions also are authorized."); *Transamerica Ins. Co. v. South*, 89 F.3d 475, 482 (7th Cir. 1996) (characterizing "any" as a "variant" of "a" and "an").

8

18. Thus, Congress did have reason to use "*a* person" instead of "*the* person," but it was to broaden, not narrow, voters' right to choose.

Defendants' other authorities—two state court cases lacking textual analysis and a Texas district court case pre-dating *OCA*[7]—fare no better. *DiPietrae v. Philadelphia*, 666 A.2d 1132 (Pa. Commw. Ct. 1995), for instance, does not help Defendants. Opp. at 25. Citing no authority, the court summarily invented a "reasonable means" test to balance "the rights of a disabled person . . . with the public need to insure a fair election." *Id.* at 1135-36. No other court has taken that approach, which has no textual basis.[8] *See Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 879 (E.D.N.C. 2022) ("Federal courts have shown little tolerance for any narrowing of the Section 208 right.").

The cases on which Defendants rely are dwarfed by the majority of Section 208 cases, which support Plaintiffs.[9] In short, Defendants' attempt to save S.B. 2358 contravenes Section 208's plain text and favors outlier cases over binding circuit precedent.

---

[7] *Ray v. Texas* suffers from the same flaw as *Nessel*. No. 2-06-CV-385TJW, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) (declining "to construe 'a person of the voter's choice' to mean that the voter may choose *any* person"). In any event, "*Ray* pre-dates *OCA-Greater Houston*" and was necessarily overruled to the extent it is inconsistent with Fifth Circuit precedent. *Arkansas United v. Thurston*, No. 5:20-CV-5193, 2022 WL 4097988, at *17 n.15 (W.D. Ark. Sept. 7, 2022).

[8] Similarly, this Court should reject use of legislative history to create an "undue burden" test. Opp. at 19-20 (citing S. Rep. 97-417 at 241 (1982) and *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1197 (Ill. App. Ct. 2004)). The concept appears nowhere in the statute, and legislative history cannot overcome the clear text. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019). And in any event, S.B. 2358 sharply curtails voters' options for assistance—and Defendants do not dispute that it would likely disenfranchise many voters, including voters assisted by Plaintiffs—and is therefore unquestionably an "undue burden." *See* Dkt. 3-1 ¶ 13; S. Rep. No. 97-417, at 62 (1982) (state laws that "deny" necessary assistance are preempted); *cf. Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 619 (E.D. Mich. 2020) (finding no undue burden because no evidence of denial of assistance).

[9] *E.g.*, *Thurston*, 2022 WL 4097988, at *16 ("With the exception of the voter's employer or union representative, Congress wrote § 208 to allow voters to choose any assistor they want."); *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1032 (W.D. Wis. 2022) (similar); *Disability Rts. N.C.*, 2022 WL 2678884, at *6 (similar); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 235 (M.D.N.C. 2020) (similar); *United States v. Berks Cnty.*, 277 F. Supp. 2d 570, 584 (E.D. Pa. 2003) (similar).

### III.     REMAINING INJUNCTION FACTORS FAVOR PLAINTIFFS.

Defendants do not seriously dispute that Plaintiffs will suffer myriad irreparable harms, including denial of critical assistance with voting, impairment of organizational priorities, and loss of opportunity to engage with voters prior to the next election. Pls. Br. at 18-20. While Defendants claim an interest in enforcing a law that purportedly reflects the will of Mississippi voters, they ignore the reality that S.B. 2358 will disenfranchise Mississippians. *See* Opp. at 27. S.B. 2358 also conflicts with federal law, through which Congress already considered issues of voter access and undue influence when it enacted Section 208. Moreover, Defendants baselessly assert that S.B. 2358 is needed to ensure confidence in elections, Opp. at 26-27, while blatantly ignoring already existing state law which guards against illegitimate votes. *See* Miss. Code Ann. § 97-13-37. And indeed, Defendants can enforce the new restrictions in S.B. 2358 in cases involving voters who are not covered under Section 208. Simply put, none of the equitable considerations favors unlawfully disenfranchising voters and punishing organizations and individuals for assisting Mississippians with disabilities and other limitations.

### IV.     PLAINTIFFS' REQUESTED RELIEF IS NECESSARY AND APPROPRIATE.

Injunctive relief extending to all voters covered under Section 208 is needed to redress Plaintiffs' injuries. As an initial matter, S.B. 2358 is "pre-empted to the extent it conflicts with federal law." *NCNB Texas Nat. Bank v. Cowden*, 895 F.2d 1488, 1494 (5th Cir. 1990). Here, S.B. 2358 frustrates the rights of those covered under Section 208 and must be invalidated on its face to the full extent of its conflict with federal law. 52 U.S.C. § 10508.

Injunctive relief also should extend statewide in order to redress harm to Plaintiffs DRMS and LWV-MS and their members. Plaintiff organizations operate throughout the state and represent voters across the state, including *all* voters with disabilities due to DRMS's unique status

as the state's designated P&A. Dkt. 3-2 ¶¶ 4-5, 7. Dkt. 3-5 ¶¶ 8-9. Defendants do not contest that such voters and members are likely to be irreparably harmed as a result of SB 2358. Pls. Br. at 18-20. And as a P&A, DRMS may prosecute actions on behalf of its constituents, which Defendants also do not dispute. *Supra* Section I(a). As such, statewide relief is both proper and necessary to redress the harms that Plaintiffs face. *Cf. Disability Rts. N.C.*, 2022 WL 2678884, at *7 (enjoining Defendants from enforcing challenged provisions in challenge brought by North Carolina's P&A on behalf of constituents).

Defendants' arguments that Plaintiffs must seek class certification under Rule 23 have no merit. Class certification is "unnecessary" in voting cases such as this one, where "the nature of the rights asserted require that the injunction run to the benefit of all persons similarly situated." *Fish v. Kobach*, 318 F.R.D. 450, 454-55 (D. Kan. 2016); *see also Arlene Ocasio v. Comision Estatal de Elecciones*, 486 F. Supp. 3d 478, 486 (D.P.R. 2020). It is common practice for courts to preliminarily enjoin parts of voting laws without class certification under Rule 23, and apply those injunctions to either all voters in the state or to specified groups of impacted voters.[10]

Defendants also baselessly assert that "this Court cannot order the Attorney General or the Secretary of State to issue any statements regarding S.B. 2358." Opp. at 27. *OCA* does not support Defendants' position. In that case, the district court's injunction was overbroad because it enjoined a section of Texas's Election Code that the plaintiffs had not challenged. *OCA*, 867 F.3d at 616. This has nothing to do with Plaintiffs' proposed injunction or requiring the transmittal of accurate election information to the public, which is necessary to prevent further harm to Plaintiffs LWV-MS and DRMS.

---

[10] *See, e.g.*, *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 248 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012); *Thomas v. Andino ("Thomas")*, 613 F. Supp. 3d 926, 962–63 (D.S.C. 2020).

11

Courts routinely require states to publicize changes in election rules. Doing so reduces voter confusion and improves compliance with court orders. For example, in *Thomas*, the court ordered "[d]efendants to immediately and publicly inform" voters about absentee requirements and to publish information regarding the court's injunction "on all relevant websites and social media." 613 F. Supp. 3d at 962-63. So too, in *Arlene*, the court required the state to conduct a "media orientation campaign to apprise" voters and to post relevant information online. 486 F. Supp. 3d 478, 486 (D.P.R. 2020); *see also Fish v. Kobach*, 309 F. Supp. 3d 1048, 1114 (D. Kan. 2018), *aff'd sub nom. Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020).

Finally, Defendants mischaracterize Plaintiffs' motion as requesting a "universal injunction," *i.e.*, a nationwide injunction against a federal law. Opp. at 28-29. Here, Plaintiffs seek a state-specific injunction, preventing enforcement of an unlawful state law in order to remedy the specific harms that Plaintiffs experience throughout the state. Such relief is routine where a plaintiff challenges a state statute that conflicts with federal law. The facts here therefore bear no resemblance to any of the inapposite cases Defendants cite. *See* Opp. 28-29.[11]

## CONCLUSION

Plaintiffs' Urgent and Necessitous Motion for Preliminary Injunction should be granted.

---

[11] What is actually relevant to this case is the long history of federal courts enjoining state laws and granting relief to nonparties in those cases. *See* Mila Sohoni, *The Lost History of the "Universal" Injunction*, 133 Harv. L. Rev. 920, 958-979 (2020).

DATED: June 12, 2023

/s/ *Leslie Faith Jones*
SOUTHERN POVERTY LAW CENTER
Leslie Faith Jones (Miss. Bar. No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
leslie.jones@splcenter.org

Bradley E. Heard**
Sabrina Khan**
Jess Unger**
Ahmed Soussi**
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(334) 213-8303
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org
ahmed.soussi@splcenter.org

MISSISSIPPI CENTER FOR JUSTICE
Robert McDuff (Miss. Bar No. 2532)
210 E. Capitol St., Suite 1800
Jackson, Mississippi 39201
(601) 259-8484
rmcduff@mscenterforjustice.org

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Claudia Williams Hyman**
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org
cwilliamshyman@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Ming Cheung**
Casey Smith**
Ari J. Savitzky*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
csmith@aclu.org
asavitzky@aclu.org
slakin@aclu.org

DISABILITY RIGHTS MISSISSIPPI
Greta Kemp Martin, (Miss. Bar No. 103672)
Katherine Henderson, (Miss. Bar No. 104522)
5 Old River Place, Suite 101
Jackson, MS 39202
Office: (601)968-0600
Facsimile: (601)968-0665
gmartin@drms.ms
khenderson@drms.ms

*Attorneys for Plaintiffs*

*Pro Hac Vice Forthcoming
**Admitted Pro Hac Vice

13

**CERTIFICATE OF SERVICE**

I hereby certify on this 12th day of June, 2023, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

/s/ *Leslie Faith Jones*
Leslie Faith Jones

Dated: June 12, 2023