IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MISSISSIPPI, LEAGUE OF WOMEN VOTERS OF MISSISSIPPI, WILLIAM EARL WHITLEY, MAMIE CUNNINGHAM, and YVONNE GUNN,<br><br>*Plaintiffs*,<br><br>v.<br><br>LYNN FITCH, in her official capacity as Attorney General of the State of Mississippi; MICHAEL D. WATSON, JR., in his official capacity as Secretary of State of Mississippi; GERALD A. MUMFORD, in his official capacity as Hinds County Attorney; and ELIZABETH AUSBERN, in her official capacity as Chickasaw County Attorney;<br><br>*Defendants*. | Civil Action No. 3:23-cv-00350-HTW-LGI |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to this Court's instruction at the motion hearing on June 13, 2023, Plaintiffs respectfully submit this notice of additional authorities, regarding (i) this Court's authority to require Defendants to notify the public of the effects of this Court's preliminary injunction, should one issue and (ii) the possibility of broadly construing "caregiver" under S.B. 2358.

First, as Plaintiffs argued at the hearing, courts in voting rights cases routinely require state officials, particularly the Secretary of State, to publish updated, accurate information about elections when a pertinent injunction is issued. For instance, in *Miller v. Bibb Cnty. Sch. Dist.*, the court enjoined the use of malapportioned districts in school board elections and ordered election

1

officials to ensure that "the terms of [the] order . . . are given extensive coverage in the media in Bibb County," to "post a copy of [the] order on their website and post it physically in their main offices and any satellite offices they maintain," and to notify affected candidates of the order. No. 12-CV-239, 2012 WL 2529440, at *3 (M.D. Ga. June 29, 2012). In *Crowell v. Cobb Cnty. Bd. Of Elec. & Reg.*, the court extended voters' deadline for the submission of absentee ballots—because of the government's unlawful delay in transmitting those ballots to voters—and ordered the defendants to "release a public announcement via the Cobb County Board of Elections and Registration website" regarding the deadline extension and notifying impacted voters that they may also utilize the federal write-in absentee ballot or vote in-person. *Crowell v. Cobb Cnty. Bd. Of Elec. & Reg.*, No. 22107734, *slip op.* at 6-9 (Ga. Super. Ct. 2022) (attached as Supp. Ex. 1). Similarly, in *Weinschenk v. Missouri*, the court enjoined state and local officials from enforcing a photo ID statute and ordered the secretary of state to "promptly provide actual notice" of the injunction "to each of the 116 local election authorities in the State." Judgment at 12-13, No. 06AC-CC00656 (Mo. Cir. Ct. 2006) (attached as Supp. Ex. 2). And in *League of Women Voters of Missouri v. Ashcroft*, the court held that the state impermissibly failed to offer voter registration services when a voter changed their mailing address—and the court ordered defendants to send a mailing to affected voters, informing them of the "opportunity to update their voter registration information" and their ability to contact local election officials and the Secretary of State for additional information. 336 F. Supp. 3d 998, 1002, 1007 (W.D. Mo. 2018).

Moreover, in *OCA-Greater Houston*, after the injunction was issued, Texas's compliance efforts included a detailed plan to inform both the public and elections officials of the effects of the court order. No. 15-CV-679, 2016 WL 4597636, at *5 (W.D. Tex. Sept. 2, 2016). There, the defendants "sent an email to more than 4,800 election officials informing them" of the injunction

and "instructing them as to how to comply with that order." *Id.* The state's efforts also included "post[ing] the Court's order on the Secretary of State's website and [revising] and updat[ing] other handbooks and training materials provided by the State." *Id.* The district court explained that, without those actions, the preempted state law would "continue to stand as a barrier to voters and to organizations seeking to encourage civic participation like Plaintiff's." *Id.* at *6. On appeal, the Fifth Circuit endorsed Texas's "substantial efforts to comply with the district court's declaration" that the restriction on voter assistance is invalid. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017).

As those cases consistently illustrate, requiring state officials to provide information to the public and issue accurate guidance to state and local elections officials—to ensure that their own constituents are informed and that compliance with a court order is uniform throughout the state—is neither novel nor onerous and in fact a matter of course.[1] Although Defendants at oral argument attempted to cabin the cases cited in Plaintiffs' Reply on this point to the COVID-19 pandemic, the foregoing cases confirm that neither COVID-19 nor any other non-election-deadline related urgency is needed to justify public notice about changes in election rules and the effects of a court order.[2]

Public notice of voting procedures and training of elections officials (in part so that they may also correctly inform voters when inquired) are both duties of the Secretary of the State, and there is no legitimate interest in publishing or maintaining incorrect information about voting laws.

---

[1] The foregoing authorities also support Plaintiffs' request to enjoin the enforcement of S.B. 2358. *E.g.*, Supp. Ex. 1 at 1-2, 7 (finding irreparable harm because affected voters will be unable to vote "without undue hardship").

[2] Requiring public notice of court orders enjoining state law also occurs in non-voting cases. *E.g.*, *Make Liberty Win v. Ziegler*, 478 F. Supp. 3d 805, 813 (W.D. Mo. 2020) (ordering state to "post prominent public notice of this Order [enjoining a campaign finance law] on the official Missouri Ethics Commission website.").

The Secretary of State maintains a public-facing website, which provides information about elections and absentee voting procedures. *See* Miss. Sec'y of State, *Elections & Voting;* Miss. Sec'y of State, [3]. While Plaintiffs are not necessarily seeking an order directing Defendants to tweet about this Court's injunction (merely that Defendants take reasonable steps to inform the public and relevant state and local officials using the tools at their disposal), the Secretary of State notably maintains a social media presence, and he has publicized S.B. 2358:



*See* Secretary Michael Watson (@MichaelWatsonMS), Twitter (Mar. 14, 2023, 10:53PM).[4] And as explained on the Secretary's website," his office "has many roles in assuring that Mississippians' voices are heard clearly through the election process . . . includ[ing] training elections officials . . . collecting election returns, and assisting local election officials in carrying out their election related responsibilities." *Supra* note 3. His responsibilities also include maintaining the "County Elections Handbook," which provides guidance to county officials on absentee ballots and the circumstances under which voters may receive assistance and the categories of persons who may provide that assistance. Miss. Sec'y of State, *County Elections*

---

[3] https://www.sos.ms.gov/absentee-votinginformation (last visited June 14, 2023).

[4] Notably, in contrast to Defendants' claims of "broad" exemptions at oral argument, Defendant Watson has told the public that such exceptions are "narrow."
https://twitter.com/MichaelWatsonMS/status/1635836688831225857.

*Handbook* (Oct. 2020).[5]  The Secretary also maintains a voter hotline to answer the public's questions about voting.  Miss. Sec'y of State, *Contact Elections*.[6]

Consistent with the authorities discussed above, Plaintiffs request that Defendants, as did Texas in *OCA-Greater Houston*, take reasonable steps in good faith to inform the public and to notify relevant state and election officials if this Court were to issue an order impacting S.B. 2358's enforcement or scope.  Defendants need only communicate accurate information about this Court's ruling, in a timely manner so as to not further chill activity protected by Section 208 of the Voting Rights Act, using the communications channels that they already maintain in the ordinary course of business.  Official statements from Defendants regarding any injunction from this Court are needed to mitigate the chilling effect of S.B. 2358, as voters and assisters are likely to trust and rely on those statements.  This relief is necessary to redress the ongoing harms to Plaintiffs, who otherwise would have to divert even greater resources to combat confusion and fear about the true scope of S.B. 2358.

Defendants rely on *Richardson v. Texas Sec'y of State*, 978 F.3d 220 (5th Cir. 2020), which is inapposite.  Dkt. 21-1 at 1-2.  First, *Richardson* held that *sovereign immunity* forbids a court from "control[ing] an officer in the exercise of his discretion." *Id.* at 242 (cleaned up).  However, "[s]overeign immunity has no role to play here" (and has not been raised by Defendants), *see generally* Opp. (Dkt. 17), because there is no sovereign immunity with respect to the Voting Rights Act claims.  *OCA-Greater Houston*, 867 F.3d at 614 ("The VRA, which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity.").  Second, even if that principle could somehow be generalized to this context (which it cannot), as

---

[5] https://www.sos.ms.gov/sites/default/files/election_and_voting/County_Elections_Handbook_Final.pdf.
[6] https://www.sos.ms.gov/elections-voting/contact-elections (last visited June 14, 2023).

Plaintiffs explain above, Plaintiffs seek only that Defendants take reasonable steps, in good faith, to provide notice of any injunction to the public and to relevant elections officials—that cannot be construed as depriving Defendants of all discretion as to how to do their jobs. *Cf. Richardson*, 978 F.3d at 243 (holding that, under sovereign immunity principles, court cannot compel state to take an action that is discretionary under state law). Moreover, compliance with Section 208 is not discretionary.

Finally, no reasonable, alternative definition of "caregiver" can save S.B. 2358 from preemption. In their briefing and during oral argument, Defendants offered numerous definitions of "caregiver" of varying scope, which only underscores the indeterminacy of the term and the chilling effect it engenders. While Defendants suggested at times that two of the individual Plaintiffs in this case may qualify as "caregivers," neither Ms. Yvonne Gunn nor Ms. Mamie Cunningham would meet the purported American Medical Association definition set forth in Defendants' brief, because neither one provides "a broad range of assistance" to the voters they volunteer to help, such as cooking, feeding, cleaning, bathing, and other tasks that might be expected of a "caregiver." *See* Opp. at 2. Ms. Cunningham, for instance, assists about ten voters each election cycle—she could not possibly be serving as a "caregiver" to ten different people as an 83-year-old retiree with her own household to manage. *See* Dkt. 3-1 ¶¶ 4, 8-9. Nor is it clear that all staff persons who could potentially handle a voter's ballot in an institutional setting necessarily have a "significant personal relationship" with each resident as required by the definition in Defendants' brief. Opp at 2; Dkt. 3-2 ¶¶ 16-19.

Moreover, even if the State did offer a consistent definition of the term "caregiver," defense counsel also acknowledged at oral argument that in the absence of an injunction, local prosecutors may adopt their own readings of the law in enforcing S.B. 2358, and, in any event, only state courts

6

can issue an authoritative interpretation of state law. *See Stenberg v. Carhart*, 530 U.S. 914, 940 (2000) ("[O]ur precedent warns against accepting as 'authoritative' an Attorney General's interpretation of state law when 'the Attorney General does not bind the state courts or local law enforcement authorities.'" (citation omitted)).  Furthermore, any definition of "caregiver," unless defined so broadly as to encompass anyone who provides voter assistance (and thereby swallowing S.B. 2358 entirely), would necessarily narrow and conflict with the scope of the rights guaranteed by Section 208 of the VRA.  *See id.* at 941 (rejecting interpretation of state law that would "twist the words of the law and give them a meaning they cannot reasonably bear").

DATED: June 15, 2023                                  Respectfully submitted,

/s/ *Leslie Faith Jones*
SOUTHERN POVERTY LAW CENTER
Leslie Faith Jones (Miss. Bar. No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
leslie.jones@splcenter.org

Bradley E. Heard**
Sabrina Khan**
Jess Unger**
Ahmed Soussi**
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(334) 213-8303
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org
ahmed.soussi@splcenter.org

MISSISSIPPI CENTER FOR JUSTICE
Robert McDuff (Miss. Bar No. 2532)
210 E. Capitol St., Suite 1800
Jackson, Mississippi 39201
(601) 259-8484
rmcduff@mscenterforjustice.org

AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Claudia Williams Hyman**
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org
cwilliamshyman@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Ming Cheung**
Casey Smith**
Ari J. Savitzky*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
csmith@aclu.org
asavitzky@aclu.org
slakin@aclu.org

DISABILITY RIGHTS MISSISSIPPI
Greta Kemp Martin, (Miss. Bar No. 103672)
Katherine Henderson, (Miss. Bar No. 104522)
5 Old River Place, Suite 101
Jackson, MS 39202
Office: (601)968-0600
Facsimile: (601)968-0665
gmartin@drms.ms
khenderson@drms.ms

*Attorneys for Plaintiffs*

*Pro Hac Vice Forthcoming
**Admitted Pro Hac Vice

1

**CERTIFICATE OF SERVICE**

    I hereby certify on this 15th day of June, 2023, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

                                         /s/ *Leslie Faith Jones*
                                         Leslie Faith Jones

Dated: June 15, 2023